**Paul R. JULMISTE, Petitioner,**

v.

**John ASHCROFT, U.S. Attorney General, et al., Respondents.**

**Civil Action No. 02–2920(JEI).**

United States District Court,
D. New Jersey.

Paul R. Julmiste, Oakdale, LA, Petitioner Pro Se.

## OPINION

IRENAS, District Judge.

Presently before the Court is the *pro se* application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, of petitioner Paul R. Julmiste ("Julmiste" or "Petitioner"). The Petitioner challenges an order of removal, entered by an Immigration Judge and affirmed by the Board of Immigration Appeals, claiming that removal will violate his rights under the U.S. Constitution, federal statutes and international human rights law. For the reasons set forth below, Petitioner's application for habeas corpus relief will be denied.

### Facts and Procedural History

Petitioner and his family were lawfully admitted to the United States as immigrants from Haiti in 1979. Petitioner is a twenty five year old male who has lived continuously in the United States for approximately 23 years. At the time of his incarceration he was a resident of New Jersey. Neither Mr. Julmiste nor the members of his family have returned to Haiti since moving to the U.S. and none of Mr. Julmiste's family members still reside in Haiti. However, Mr. Julmiste's parents have maintained strong ties with a politically and socially active Haitian refugee, named Alerte Noel. After surviving a violent attack and being left for dead by a political/ military group in Haiti, Ms. Noel fled to the U.S. where she has participated in humanitarian relief efforts and has also brought suit against the group allegedly responsible for the attack.

On August 19, 1996, Petitioner entered a plea of guilty in the State of New Jersey, Superior Court, Essex County for the offense of Conspiracy to Possess with Intent to Distribute Cocaine and was sentenced to probation. On September 29, 1997, Petitioner was convicted in State of New Jersey, Superior Court, Essex County for the offenses of Aggravated Manslaughter and Unlawful Possession of a Weapon. Petitioner was sentenced to ten years for the offense of aggravated manslaughter and an additional five years for weapon possession.

On November 8, 1999, Petitioner received a Notice to Appear ("NTA") from the Immigration and Naturalization Service ("INS").[1] After serving approximately three years of his sentence, Petitioner was transferred from prison in New Jersey to a federal detention center in Oakdale, Louisiana. Removal proceedings by the INS commenced on August 4, 2000. As a result of his criminal convictions, Petitioner was charged removable under the Immigration and Nationality Act ("INA") §§ 237(a)(2)(B)(i), 237(a)(2)(iii), and 237(a)(2)(c), 8 U.S.C.A. § 1227(a)(2).[2] After numerous continuances, the hearing resumed on November 16, 2000 and the Petitioner, through his counsel, applied for

---

1. A Notice to Appear is issued by the Department of Justice, Immigration and Naturalization Services. It sets forth in writing the allegations against an alien and the basis for removal. The alien is ordered to appear before an Immigration Judge to show why he or she should not be removed from the U.S. *See* 8 U.S.C.A. § 1229(a)(1).

2. These provisions set forth the various criminal offenses which render aliens deportable. Conviction of an aggravated felony is grounds for deportation. INA § 237(a)(2)(A), 8 U.S.C.A. § 1227(a)(2)(A)(iii). Petitioner does not contest his status under these sections.

a deferral of removal under Article III of the Convention Against Torture ("CAT")[3] claiming that he would be tortured upon return to Haiti and that therefore, a deferral was mandated.

On September 13, 2001, Immigration Judge ("IJ") Charles A. Weigland, III, denied Petitioner's application for deferral of removal and ordered Petitioner to be removed from the United States to Haiti. Petitioner appealed to the Board of Immigration Appeals ("BIA"), but his appeal was dismissed on May 21, 2002. While the BIA recognized the existence of "isolated acts of torture" in Haitian prisons, the BIA denied Petitioner's request because it concluded Petitioner failed to carry his burden of demonstrating that it was "more likely than not" that he would be subjected to torture upon returning to Haiti. Decision of the Board of Immigration Appeals, *In re: Paul Robert Julmiste*, File No. A36 470 829—Oakdale (May 21, 2002). The BIA further held "that neither indefinite detention nor inhuman prison conditions ... constitutes torture." *Id.*

On June 19, 2002, Petitioner filed in the United States District Court for the District of New Jersey an emergency petition for a writ of habeas corpus and a complaint requesting declaratory and injunctive relief with a stay of deportation. Petitioner alleges the BIA's ruling was arbitrary and capricious and also makes a claim of ineffective assistance of counsel.

## Jurisdiction

The permanent judicial review amendments ("permanent rules") to the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") govern deportation proceedings initiated after April 1, 1997.[4] *See* IIRIRA § 309(c). The permanent rules, which revised the previous rules governing jurisdiction and judicial review, tightly limit federal review of immigration cases. IIRIRA § 306(a), 8 U.S.C.A. § 1252(g). *See generally Merisier v. INS*, No. 00 CIV 0393 GBD AJP, 2000 WL 1281243, at *5–6 (S.D.N.Y. Sept.12, 2000) (discussing the 1996 Amendments and their effects on federal court jurisdiction). The passage of the Antiterrorism and Effective Death Penalty Act ("AEDPA") also limited judicial review with respect to removal orders for certain criminal aliens by repealing and revising sections of the INA.[5] *See generally id.* Following the passage of the IIRIRA and the AEDPA,[6] federal courts are no longer able to provide direct judicial review of denials of discretionary relief to criminal aliens. *See* 8 U.S.C.A. §§ 1252(a)(2)(C) ("Orders Against Criminal Aliens" pro-

---

**3.** The CAT provides in relevant part:

1) No State party shall expel, return or extradite a person to another state where there are substantial grounds for believing that he would be in danger of being subjected to torture.

2) For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations, including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

Torture Convention, Art. III; *see* 23 I.L.M. 1027, 1028 (1984); 24 I.L.M. 535, 535 (1985).

**4.** The transitional rules govern proceedings commenced prior to April 1, 1997. *See* IIRI-

RA § 309(c). In the instant case, proceedings were initiated on August 4, 2000.

**5.** AEDPA § 401(e) (Elimination of Custody Review by Habeas Corpus) and § 440(a) (Judicial Review) repealed INA § 106(a), 8 U.S.C.. § 1105a(a)(10) and replaced it with a new paragraph (10), which reads: "Any final order of deportation against an alien who is deportable by reason of having committed a [named crime] shall not be subject to review by any court." *See* Pub.L. 104–132, § 735, Title IV, § 401(e), § 440(a), September 30, 1996.

**6.** The AEDPA and IIRIRA are collectively referred to as the 1996 Amendments.

vides in relevant part that, "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense ...."), 1252(g) (dictates exclusive jurisdiction); *Liang v. INS*, 206 F.3d 308, 313–14 (3d Cir.2000).

However, the Third Circuit has consistently maintained its federal jurisdiction over habeas cases involving criminal aliens, even though it may no longer engage in "judicial review." *Liang*, 206 F.3d at 317 (Finding there is no express intent by Congress to preclude jurisdiction, and holding "a repeal of habeas jurisdiction will not be found by implication."). The Third Circuit was clear in holding "any challenge by a criminal alien to the BIA's interpretation of the immigration laws or to the constitutionality of those laws, even a claim involving substantial constitutional issues, must be made through a habeas petition rather than through a petition for review." *Liang*, 206 F.3d at 315 (referring to its decision in *Catney v. INS*, 178 F.3d 190, 195 (3d Cir.1999)).

 The Supreme Court recently resolved a split in the circuits and affirmed the continued vitality of federal jurisdiction of habeas petitions by criminal aliens. *INS v. St. Cyr*, 533 U.S. 289, 297–314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Specifically, the Supreme Court held in *St. Cyr* that the 1996 Amendments did not divest federal courts of jurisdiction under

28 U.S.C. § 2241 to hear challenges from criminal aliens regarding pure questions of law. *Id.* The Supreme Court found the "lack of a clear, unambiguous, and express statement of congressional intent" to preclude habeas review, in addition to the great potential for constitutional problems arising from the preclusion of such review, to be compelling considerations supporting its decision. *Id.* at 314, 121 S.Ct. 2271. Therefore, this Court may review Petitioner's claim under the CAT insofar as Mr. Julmiste argues that his removal to Haiti would, as a matter of law, violate his rights under federal law and international human rights law. *See Calcano–Martinez v. INS*, 232 F.3d 328, 342 (2d Cir.2000) ("Although not all challenges that an alien may launch against his removal are cognizable under habeas, purely legal statutory and constitutional claims are within § 2241's scope.").

**Standard of Review**

In general, agency actions should be reviewed with a great degree of deference when the agency is interpreting the statutes and regulations which it administers. *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 865–66, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In this context, Congress has dictated through IIRIRA the intended standard for review regarding findings of facts supporting final orders of removal.[7] IIRIRA calls for a determination whether "any reasonable adjudicator would be compelled to con-

7. Review under the Administrative Procedure Act ("APA") is not applicable in this case. The APA dictates review of the final actions of covered agencies under the abuse of discretion standard (arbitrary or capricious), "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a) (2000). In the instant case, judicial review is precluded by the 1996 Amendments. *See supra* p. 344.

Some courts have taken a two prong approach and applied a hybrid standard of review. In such cases, the ultimate denial of relief is subject to the abuse of discretion standard, such as when a motion to reopen is denied or a request for asylum is denied, while the findings of facts, such as the petitioner's level of fear and possibility of persecution, are reviewed under the substantial evidence standard. *See e.g., Melendez v. U.S. Dep't of Justice*, 926 F.2d 211, 218 (2d Cir. 1991) (The ultimate denial of asylum is to be

clude to the contrary."[8] 8 U.S.C. § 1252(b)(4)(B). While there may remain some confusion regarding "the exact scope of § 2241 habeas review of INS factual determinations after IIRIRA . . . the standard of review must be at least as deferential as it was before the 1996 Amendments, when the courts applied the substantial evidence test to asylum applications and accorded 'substantial deference' to the BIA's findings of fact." *Soto v. Ashcroft*, No. 00 CV 5986 AJP, 2001 WL 1029130, at *7 (S.D.N.Y. Sept.7, 2001) (citations and quotations omitted). The Supreme Court has spoken on this issue and held that an alien seeking judicial reversal of an immigration agency's administrative decision must show that the evidence was "so compelling that no reasonable factfinder could fail to find" in his favor. *INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The standard of review is, therefore, deferential and "exceedingly narrow." *Purveegiin v. INS Processing Center*, 73 F.Supp.2d 411, 417–18 (S.D.N.Y.1999) (citations omitted).

Substantial evidence is defined as "more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Senathirajah v. INS*, 157 F.3d 210, 216 (3d Cir.1998) (citations omitted). The substantial evidence standard requires that the BIA's finding be upheld unless the evidence not only supports, but goes further to compel a contrary conclusion. *See Elias–Zacarias*, 502 U.S. at 481 & n. 1, 112 S.Ct. 812; *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir.2001) (regarding a request for asylum).

While the Supreme Court was dealing with a denial of asylum in *Elias–Zacarias*, the substantial evidence standard articulated is also applicable to the factual findings supporting the BIA's conclusion that the Petitioner failed to meet his burden of proof under CAT. *See Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812 (1992); *Kourteva v. INS*, 151 F.Supp.2d 1126, 1130 (N.D.Cal. 2001) (denying habeas petition, the district court applied the substantial evidence standard and affirmed BIA's decision to deny relief under CAT because there was substantial evidence supporting BIA's decision.).

### The Convention Against Torture Treaty (CAT)

Petitioner brings this claim under Article III of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment.[9] Petitioner asserts that he will be

---

reviewed under the abuse of discretion standard, but the threshold finding of petitioner's level of fear is subject to the substantial evidence test; also noting it would be non-sensical to apply a purely discretionary standard when the decision is in part non-discretionary, because the INS is mandated to grant relief once the petitioner has shown he will persecuted in the country of removal.); *Kamalthas v. INS*, 251 F.3d 1279, 1281–82 (9th Cir.2001). This Court need not apply the hybrid standard in the instant case, even if it is appropriate, since the Third Circuit has noted that there is no "substantive difference" between the requirements of the arbitrary or capricious standard and the substantial evidence test since "it is impossible to conceive of a nonarbitrary factual judgement sup-

ported only by evidence that is not substantial in the APA sense." *Sevoian v. INS*, 290 F.3d 166, 174 (3d Cir.2002) (quoting *Assn of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683–84 (D.C.Cir.1984)) (Scalia, J.).

8. Refers only to proceedings commenced after April 1, 1997. *See supra* note 4 and accompanying discussion.

9. On December 10, 1984, the U.N. General Assembly adopted the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. 24 I.L.M. 535, 535 (1985). The treaty was ratified by the United States Senate on October 21, 1994, and became effective one month later. 35 I.L.M. 590, 591 (1995). It was later imple-

tortured upon return to Haiti, and the U.S. is therefore obligated by the CAT to not remove him.[10]

Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining ... information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or a her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). Furthermore, torture "is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment." 8 C.F.R. § 208.18(a)(2). "[P]ain and suffering" stemming from lawful sanctions will not be considered torture. 8 C.F.R. § 208.18(a)(3). When invoking the protections of this treaty, a petitioner has the burden of proof to show that it is "more likely than not" that he will be tortured, as defined above, upon removal to the said country. 8 C.F.R. § 208.16(c)(2) (Burden of proof is on the applicant to "establish

that it is more likely than not that he or she would be tortured ...").

The IJ or BIA may rely on the applicant's testimony alone if it is credible. 8 C.F.R. § 208.16(c)(2). If the applicant's testimony alone is not credible, then the administrative adjudicator shall consider all evidence relevant to the possibility of future torture, which may include evidence of past torture, evidence of gross, flagrant or mass violations of human rights within the country of removal, and any other relevant information regarding conditions in the country of removal. 8 C.F.R. § 208.16(c).

Under CAT, the IJ must first determine if the petitioner has shown that it is more likely than not that he will be tortured upon return to the country of removal. If the petitioner has satisfied his burden of proof, then the IJ may grant either a Withholding of Removal or a Deferral of Removal. The withholding of removal has limited application and is subject to conditions; it is not available to aliens considered to be dangers to society, such as convicted criminal felons. 8 C.F.R. §§ 208.16(d)(2)(Withholdings of removals are subject to mandatory denials if the alien falls under § 241(b)(3)(B) of the INA), 208.16(d)(3) (Only one exception exists and its application is limited to offenders tried before April 1, 1997.).[11] A defer-

mented into legislation by Congress as part of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), which is incorporated as a note to 8 U.S.C.A. 1231. *See* §§ 2242 of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub.L. No. 105–277, Div. G, 112 Stat. 2681, 2681–821 (Oct. 21, 1998) ("CAT" or "Convention"). Regulations were passed in 1999 to harmonize the immigration rules with the provisions of CAT. *See* Regulations Concerning the Convention Against Torture, 64 Fed.Reg. 8478 (1999), codified at 8 C.F.R. § 208.16–.18.

10.  *See supra* note 3 and accompanying discussion regarding the CAT's provisions and Petitioner's claim.

11.  INA § 241(b)(3)(B) can in effect override the previous section (§ 241(b)(3)(A)), which prohibits removal by the Attorney General if the applicant's life or freedom would be threatened based on race, religion, nationality, membership in a particular social group, or political opinion, and disqualify its application if:

[T]he alien, having been convicted by a final judgement of a particularly serious crime is a danger to the community of the United States; .... [A]n alien who has been convicted of an aggravated felony for which the alien has been sentenced to an aggregate term of imprisonment of at least five years shall be considered to have committed a particularly serious crime.

ral of removal may be available to aliens whose request for a withholding of removal would be subject to a mandatory denial. 8 C.F.R. §§ 208.16(d)(2), 208.16(d)(3), 208.17(a). Since Petitioner's prior convictions constitute "serious crimes," a deferral of removal is the only form of relief available to him.

### Evaluation of Evidence

The evidence put forth in support of Petitioner's claim under CAT regarding potential torture in Haiti is comprised of findings of fact that this Court should review under the deferential substantial evidence standard. Because this Court finds the INS' holding was supported by substantial evidence, Petitioner's application for a writ of habeas corpus will be denied.

■ At his removal hearing and appeal to the BIA, Petitioner put forth evidence from the U.S. Department of State, Amnesty International, media sources and personal contacts. While these articles do show that Haiti is a poor, unstable, war torn country, they do not suggest that the Petitioner, himself, will personally suffer torture upon return to Haiti. Mr. Julmiste has cited no evidence showing he has been active in any of the political, economic or social happenings in Haiti. It is possible that Mr. Julmiste will serve a lengthy prison term in Haiti, as a consequence of his criminal offenses in the U.S., but that possibility alone does not fall within the definition of torture. While the CAT can protect an individual from removal to a country when he has shown it is more likely than not he will be tortured, the CAT does not provide protection from general ills, such as corruption, poverty and dilapidated prison conditions. *See e.g. Sevoian v. Ashcroft,* 290 F.3d 166, 175–76

(3d Cir.2002)(State Department Report showing that prisoners are routinely abused and certain political defendants have been tortured in the past did not "suggest whether much or any of the 'beating and abuse' ... [would match] the extreme level that violates the Convention Against Torture.").

Petitioner has provided letters from his family and a political refugee named Alerte Noel which contend that Mr. Julmiste is in danger because his parents have offered support to Ms. Noel. Mr. Julmiste's arguments that by name association alone he will be tortured in retribution for his parents involvement with Ms. Noel are unpersuasive and do not satisfy his burden of proof. *See e.g., Sevoian,* 290 F.3d at 176 (Second hand testimony regarding abuses against similarly situated third parties is not sufficient, "in light of other evidence, to outweigh the deference" accorded to the BIA.); *Merisier,* 2000 WL 1281243, at * 12 (S.D.N.Y. Sept.12, 2000) ("Haiti's violent past, and even [Petitioner's] relatives' alleged participation in it, is not, without more, substantial grounds for believing that removing [Petitioner] to Haiti would likely result in his being tortured.").

While the BIA recognized the dangers and hardships associated with living in Haiti, it properly concluded that the Petitioner failed to produce sufficient evidence to suggest a likelihood that he, himself, would be subjected to torture. In spite of the unfortunate consequences [12] that may befall the Petitioner, living without his family in a war torn, politically unstable and poor country, neither the federal immigration laws nor the treaty obligations under CAT provide relief for him.

§ 241(b)(3)(B) of the INA; 8 C.F.R. § 208.16(d)(2).

**12.** "[D]eportation ... visits a great hardship on the individual and deprives him of the

right to stay and live and work in this land of freedom." *Chlomos v. INS,* 516 F.2d 310, 313 (3d Cir.1975).

Because the BIA's decision was based on substantial evidence and the Petitioner failed to make a sufficient showing that his removal to Haiti would likely result in his being subjected to torture of the type contemplated by the CAT, the Court will deny Petitioner's writ.

**Ineffective Assistance of Counsel Claim**

■ This Court dismisses Petitioner's claim of ineffective assistance of counsel on the merits. A respondent has a right to be represented by counsel, "at no expense to the government", *see* 8 U.S.C.A. 1229a(b)(4)(a), but since a deportation hearing is civil, and not criminal, an alien is not guaranteed appointed counsel. *See e.g., INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) ("Consistent with the civil nature of the proceeding various protections that apply in the context of a criminal trial do not apply in a deportation hearing."); *Acewicz v. INS,* 984 F.2d 1056, 1062 (9th Cir.1993). Consequently, an alien must make a claim of ineffective assistance of counsel under the due process clause of the Fifth Amendment to the U.S. Constitution, and not under the Sixth Amendment. *Xu Yong Lu v. Ashcroft,* 259 F.3d 127, 131 (3d Cir. 2001); *Michelson v. INS,* 897 F.2d 465 (10th Cir.1990).

■ Despite the fact that there is no guarantee of counsel, when one does appear on behalf of an alien, some courts have found the counsel's incompetence may prejudice the alien and "may make the hearing fundamentally unfair and give rise to a Fifth Amendment due process objection." *Hernandez v. Reno,* 238 F.3d 50, 55 (1st Cir.2001). *See also Pop v. INS,* 279 F.3d 457, 460 (7th Cir.2002)("In this circuit, however, whether there exists a constitutional right to effective assistance of counsel in immigration cases is virtually foreclosed .... [and if the claim is not foreclosed, then the alien must] at a minimum show actual prejudice."). In order to succeed, an alien must show more than mere ineffective assistance. *Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1226 (9th Cir.2002). Indeed, an alien must establish that his counsel was so ineffective as to have created prejudice by impinging upon the fundamental fairness of the hearing. *Id.* The Third Circuit, citing the First Circuit Court of Appeals, found ineffective assistance of counsel may amount to a denial of due process "if the alien was prevented from reasonably presenting his case." *Xu Yong Lu,* 259 F.3d at 131 (quoting *Lozada v. INS,* 857 F.2d 10, 13–14 (1st Cir.1988)).

■ In the instant case, Petitioner claims that counsel could have applied for other relief, but Petitioner's belief that such relief was available to him is misplaced and without legal basis. *See Mejia Rodriguez v. Reno,* 178 F.3d 1139, 1148 (11th Cir.1999) (Taking a restrictive approach, holding since waiver relief is so speculative, "an attorney's deficient representation does not deprive an alien of due process if the deficient representation merely prevents the alien from being eligible for suspension of deportation."). Petitioner also claims that counsel erred by failing to produce certain evidence, such as a 60 minutes videotape on Haiti, and that as a consequence of this error, Petitioner was prejudiced. These allegations are without merit, as Petitioner was able to reasonably present his case. *See Xu Yong Lu,* 259 F.3d at 131.

Mr. Julmiste has not shown his counsel's performance had been deficient or that the degree of deficiency was so severe that Petitioner was prejudiced and denied a fair trial.

**Conclusion**

Because the decision to order removal was supported by substantial evidence and consistent with the CAT, and because the Petitioner has failed to put forth sufficient

evidence to support his claim, Petitioner's application for a writ of habeas corpus will be denied and all additional requests for relief will not be considered.