**Dan Ismaila SULAIMAN, Petitioner,**

v.

**ATTORNEY GENERAL, Immigration And Naturalization Service, and Bureau Of Immigration Appeals, Respondents.**

**Civil Action No. 01–6830.**

United States District Court,
E.D. Pennsylvania.

July 30, 2002.

Dan Sulaiman, Leesport, PA, pro se.

Stephen J. Britt, U.S. Attorney's Office, Philadelphia, PA, James G. Sheehan, Philadelphia, PA, for Respondent.

### *MEMORANDUM*

DuBOIS, District Judge.

### I. *INTRODUCTION*

Petitioner, Dan Sulaiman, is a Nigerian alien currently detained in the Berks County Prison, Leesport, Pennsylvania. He is subject to a deportation order as a result of a 1996 conviction for bank fraud in the Eastern District of New York and an Immigration & Naturalization Service ("INS") determination that he entered the United States illegally. Although petitioner is not eligible for asylum because of his conviction of an "aggravated felony," he seeks relief from deportation to Nigeria under the United Nations Convention

Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec.10, 1984, 23 I.L.M. 1027 (1984), as modified, 24 I.L.M. 535 (1985) ("Convention Against Torture"). Currently before the Court are petitioner's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a number of related filings.

Upon consideration of the factual record and applicable law, the Court concludes that petitioner's legal claims are without merit and dismisses his petition for writ of habeas corpus.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

On November 26, 1996 petitioner was convicted in the Eastern District of New York for bank fraud in violation of 18 U.S.C. § 1344, sentenced to twelve months of incarceration with five years of supervised release and ordered to pay $176,911.92 in restitution. *In re Sulaiman*, Bureau of Immigration Appeals, A73 663 971 (December 10, 2001) (Appended to petition for writ of habeas corpus) ("BIA Decision") at 1. The INS detained him upon completion of his sentence in June

2000,[1] Government's Response at 1, and sought to remove him from the United States on two grounds: his criminal conviction, pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I), and the INS determination that he entered the country illegally, pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).[2] *Id.*

In August 2001 petitioner filed a request with an Immigration Judge seeking political asylum and protection under Article III of the Convention Against Torture. He claimed that he would be arrested and tortured upon arrival in Nigeria because of his membership in a privileged family, political affiliations and status as a criminal deportee from the United States. *In re Sulaiman*, Oral Decision of the Immigration Judge, A73 663 971 (August 10, 2001) (appended to petition for writ of habeas corpus) ("Oral Decision of Immigration Judge") at 25. At a hearing on August 10, 2001 the Immigration Judge found petitioner ineligible for asylum as an aggravated felon, but granted him "deferral of removal"[3] based on his contention that he would be subjected to torture as a deported criminal who "tarnish[ed] the name of Nigeria" abroad.[4] *Id.* at 28. Petitioner

---

**1.** There is nothing in the record to explain why petitioner concluded his twelve-month sentence nearly four years after his conviction.

**2.** Petitioner claims that he was admitted to the United States twice, each time with a passport in his own name. *In re Sulaiman*, Oral Decision of the Immigration Judge, A73 663 971 (August 10, 2001) (appended to petition for writ of habeas corpus) ("Oral Decision of Immigration Judge") at 1. He offered no other evidence of legal admission and an Immigration Judge determined that he was an inadmissible alien subject to removal. *Id.* at 1. This factual dispute is not subject to review by this Court. *See infra* § III. B.

**3.** The Order of the Immigration Judge uses the phrase "withholding," but the INS regulation provides that petitioner should have been granted a "deferral," 8 C.F.R. § 208.16(c)(4),

a phrase the government also uses to describe the decision. Government's Response at 2.

Deferral of removal is a temporary condition subject to further review by the INS and immediate discretionary termination by the Attorney General. Furthermore, it only guarantees deferral from deportation to the specific country where the alien is likely to be tortured. 8 C.F.R. § 208.17. Withholding of removal, on the other hand, is an "absolute prohibition against removal." Immigration Law Service 2d, Glossary, Anna Gallagher.

The Attorney General's determination that petitioner was an aggravated felon constituted a mandatory denial of withholding of removal. 8 C.F.R. § 208.17.

**4.** The Immigration Judge found that petitioner's claims regarding his family and political affiliations were not credible. Oral Decision of Immigration Judge at 29.

appealed to the Bureau of Immigration Appeals seeking a "withholding" of removal, which would grant him lawful status in the United States, on the ground that bank fraud was not an aggravated felony. BIA Decision at 2. The INS cross-appealed arguing that petitioner's testimony about the prospect of being tortured in Nigeria was insufficient. *Id.* On December 10, 2001 the Bureau of Immigration Appeals ("BIA") upheld the Immigration Judge's finding that petitioner was convicted of an aggravated felony and consequently not eligible for asylum, but overturned the part of the decision granting Convention Against Torture protection on the grounds that petitioner failed to meet his burden of proving that it was "more likely than not" that he would be tortured. BIA Decision at 2–3. Pursuant to that decision, petitioner was ordered removed to Nigeria. *Id.* at 3.

On December 21, 2001 petitioner filed the pending petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. As will be explained below, *infra* § III.B., this Court does not have jurisdiction over petitioner's challenge to the Bureau of Immigration Appeals' factual determinations regarding the likelihood of torture upon his return to Nigeria. It does, however, have jurisdiction to address any claims that his deportation process violated the Constitution or federal law. The Court construes petitioner's argument as containing four such claims: (1) BIA illegally failed to consider evidence of the possibility of future torture, (2) Convention Against Torture protection is mandatory as a matter of law, (3) BIA applied an erroneous legal

standard and (4) INS has violated petitioner's procedural and substantive due process rights.

After submitting a number of filings relating to the habeas corpus proceeding, petitioner filed a Motion for Appointment of Counsel. Thereafter, based upon his allegation that he was "almost deported," petitioner filed an "Emergency Request" seeking the Court's intervention to prevent his deportation before the resolution of the pending habeas corpus petition. The Court granted petitioner's Emergency Request in an Order dated May 28, 2002 and directed that any deportation of petitioner be stayed pending further order of the Court. Finally, petitioner filed a document asserting that his detention was unconstitutional and requesting a bail hearing.

As discussed below, the Court concludes that none of petitioner's substantive claims for relief are meritorious. Accordingly, the Court denies the petition for habeas corpus, the request for a bail hearing, and the motion for appointment of counsel.

## III. *RELEVANT LAW*

### A. SUBSTANTIVE IMMIGRATION LAW

Aliens are not eligible for asylum in this country if the Attorney General determines that they have been convicted of an aggravated felony[5] or other "particularly serious crime." 8 U.S.C. § 1158(b)(2)(B). Nevertheless, aliens may still be eligible for protection under the Convention

---

**5.** Petitioner was convicted for violating 18 U.S.C. § 1344, which provides for criminal liability for anyone who "knowingly executes, or attempts to execute, a scheme or artifice- (1) to defraud a financial institution; or (2) to obtain ... property owned by ... a financial institution, by means of false or fraudulent pretenses, representations, or promises...." BIA Decision at 2.

In determining that petitioner's conviction for bank fraud constituted an aggravated felony for the purpose of denying asylum, the Immigration Judge relied on the section of the statute which defines an "aggravated felony," *inter alia,* as "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i).

Against Torture. Congress has not specifically enacted legislation implementing the Convention, but has compelled the "appropriate agencies" to do so through regulations. United States Policy with Respect to the Involuntary Return of Persons in Danger of Subjection to Torture, Pub.L. 105–277, Div. G., Title XXII, § 2242, Oct. 21, 1998, 112 Stat. 2681–822. The Attorney General did so in February 1999 at 8 C.F.R. § 208. The regulations state, in part:

> If the immigration judge determines that the alien is more likely than not to be tortured in the country of removal, the alien is entitled to protection under the Convention Against Torture. Protection ... will be granted either in the form of withholding of removal or in the form of deferral of removal. An alien entitled to such protection shall be granted withholding of removal unless the alien is subject to mandatory denial of withholding of removal .... If an alien entitled to such protection is subject to mandatory denial of withholding of removal ... the alien's removal shall be deferred ....

8 C.F.R. § 208.16(c)(4).

### B. FEDERAL COURT REVIEW OF ADMINISTRATIVE IMMIGRATION DECISIONS

Despite the limitations on federal court review of executive branch deportation decisions set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), it is well established that this Court retains jurisdiction under 28 U.S.C. § 2241(c) to decide habeas petitions filed by criminal aliens subject to deportation.

*Chmakov v. Blackman,* 266 F.3d 210, 213 (3d Cir.2001) (citing *Zadvydas v. Davis,* 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *INS v. St. Cyr.,* 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)) ("Both the Supreme Court and this Court have determined that notwithstanding the provisions of AEDPA or IIRIRA, district courts retain jurisdiction to hear habeas petitions filed by aliens subject to deportation for having committed certain criminal offenses."). The scope of review of such claims, however, is limited to questions of law. *Sol v. INS,* 274 F.3d 648, 651 (2d Cir.2001) (holding that "federal jurisdiction over § 2241 petitions does not extend to review of discretionary determinations by the IJ and BIA."); *Bowrin v. U.S. INS,* 194 F.3d 483, 490 (4th Cir.1999) ("Only questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited."); *Bradshaw v. INS,* 2002 WL 1160832, at *1 (E.D.Pa. June 3, 2002) (citing *Sol,* 274 F.3d at 651); *see also St. Cyr,* 533 U.S. at 312, 121 S.Ct. 2271 (citing *Heikkila v. Barber,* 345 U.S. 229, 236, 73 S.Ct. 603, 97 L.Ed. 972 (1953)) (noting that scope of review in habeas corpus cases is "far narrower" than that authorized by the Administrative Procedure Act).[6]

### IV. DISCUSSION

Because of this Court's limited review, the issue in this case is whether BIA's decision to deny petitioner's deferral of removal violated the Constitution or the laws of the United States. As such, the Court will not consider petitioner's challenge to the merits of the agency decision. The Court will, however, address the four

---

**6.** The Third Circuit has not directly addressed the scope of review under § 2241, but it has acknowledged the limitations on federal court review of BIA discretionary decisions. *See Catney v. INS,* 178 F.3d 190, 195 (3d Cir.

1999) ("[F]ollowing passage of AEDPA and IIRIRA, we no longer have jurisdiction to review a denial of discretionary relief to a criminal alien.").

legal claims set forth in the petition and later submissions.

## A. PETITIONER'S CLAIM THAT BIA VIOLATED 8 C.F.R. § 208.16(c)(3)

Petitioner claims that BIA "failed to give due consideration to this other evidence that is submitted and recognized by the board (BIA) itself but also just relied on the 1999 Country Report." Petition at 6. The "other evidence" to which petitioner refers consists of voluminous materials he presented to show the likelihood that he would be tortured in Nigeria. Although petitioner describes this alleged failure as an "abuse of discretion," the Court construes the argument to constitute a legal challenge under 8 C.F.R. § 208.16(c)(3). That section requires BIA to consider "all evidence relevant to the possibility of future torture ... including but not limited to ... [e]vidence of gross, flagrant or mass violations of human rights within the country of removal." 8 C.F.R. § 208.16(c)(3). To prevail on this claim, petitioner must show that BIA failed to consider "relevant evidence," as required by the regulation. The Court concludes that in light of how the Third Circuit has interpreted 8 C.F.R. § 208.16(c)(3), it cannot be said that BIA erred as a matter of law in its evaluation of petitioner's submissions.

In *Sevoian v. Ashcroft*, 290 F.3d 166 (3d Cir.2002), the Third Circuit addressed a BIA decision regarding evidence to be considered in claims for protection under the Convention Against Torture. In that case, BIA refused to reopen Sevoian's removal proceeding after he sought to add a claim for Convention Against Torture protection. BIA so acted on the ground that Sevoian had failed to make a prima facie case for relief during his first hearing, in which he sought asylum from religious and ethnic persecution. *Id.* at 168. Sevoian challenged the ruling on the ground that BIA abused its discretion in failing to give suffi-

cient weight to his evidence in violation of 8 C.F.R. § 208.16(c)(3). *Id.* at 175–76. The Third Circuit rejected Sevoian's claim, holding that BIA could give more weight to State Department Reports than human-rights group documents. More generally, that court ruled that BIA was not required to "address explicitly each type of evidence" to comply with 8 C.F.R. § 208.16(c)(3) but only to "show that it has reviewed the record and grasped the movant's claims." *Id.* at 178.

■ Despite its different procedural posture, the import of *Sevoian* is that 8 C.F.R. § 208.16(c)(3) imposes a lesser standard on BIA than that argued for by petitioner. Applying that principle to this case, BIA did address petitioner's evidence concerning Nigeria's political instability and policy of detaining criminal deportees in its final decision, but chose to rely upon State Department reports to the contrary. BIA Decision at 3. Moreover, BIA held that petitioner did not meet his burden of proving that he, specifically, would be tortured upon return. *Id.* Although the Court notes the substantial evidence presented in favor of petitioner's claim, it cannot hold that BIA's consideration of the evidence violated the regulation.

## B. PETITIONER'S CLAIM THAT CONVENTION AGAINST TORTURE PROTECTION WAS MANDATORY

Petitioner further claims that "for those who meet the respective standards ... Article '3' [of the Convention Against Torture] protection is mandatory." Opposition to Respondent's Motion to Dismiss Petitioner's Claim As [*sic*] Lack of Subject Matter Jurisdiction at 8. He therefore argues that the question is purely legal and subject to review by this Court.

■ A petitioner *who meets the respective standards* is indeed entitled to manda-

tory protection under the Convention Against Torture. However, as the government points out, petitioner fails to recognize that the BIA decision pertains to the issue of whether he meets those standards in the first instance. Government's Second Response to Petition for Writ of Habeas Corpus at 3. Under relevant law, "the Attorney General may not remove an alien to a country *if the Attorney General decides* that the alien's life or freedom would be threatened in that country ...." 8 U.S.C. § 1231(b)(3). From this language, the government correctly argues that BIA, acting on behalf of the Attorney General, had discretionary authority to decide whether petitioner qualified for protection.[7] Government's Second Response at 3. The government's position is further supported by the regulations which confer authority on the Immigration Judge to determine whether the alien qualifies for protection under the Convention. 8 C.F.R. § 208.16(c)(4). In sum, petitioner misconstrues the inquiry to be conducted for claims made pursuant to the Convention. His second claim is without merit.

## C. PETITIONER'S CLAIM THAT BIA APPLIED AN ERRONEOUS LEGAL STANDARD

Petitioner's third claim arises out of an error in the government's brief. The government confuses two different procedural mechanisms that an alien can use to avoid removal: one under the Immigration and Nationality Act ("INA") and another under the Convention Against Torture. Under the INA, aliens applying for asylum pursuant to 8 U.S.C. § 1101(a)(42)(A) or withholding of removal under 8 C.F.R § 208.16(b)(1) must demonstrate "persecution or a well-founded fear of persecution on account of race, religion, nationality,

membership in a particular social group, or political opinion." Aliens seeking protection under the Convention Against Torture, on the other hand, must meet a lower standard; they need only show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

In response to petitioner's claim that he will be jailed upon his return as a criminal who "tarnishe[d] the name of Nigeria" abroad, Petition at 4, the government argues the INA standard—that BIA "reasonably enough, declines to hold that expatriate criminals are a discrete 'social group.'" Government's Response at 9. Petitioner correctly rebuts that to obtain protection "under Article 3 of the Convention Against Torture, harm need not be on account of a protected characteristic, as long as the alien meet[s] the requirement as required by law." Petitioner's Opposition at 8. Petitioner's analysis is supported by the Ninth Circuit's decision in *Kamalthas v. INS*, 251 F.3d 1279, 1283 (9th Cir.2001), which held that "claims for relief under the Convention are analytically separate from claims for asylum under the INA" and are "not merely a subset of claims for either asylum or withholding of removal."

Although Petitioner is correct in pointing out this flaw in the government's argument, it is clear that BIA did not make the same mistake. It applied the correct standard, holding "the respondent did not meet his burden of proof by establishing that it is more likely than not that he will be tortured if returned to Nigeria." BIA Decision at 3 (citing 8 C.F.R. § 208.16(c)(2)). As a result, this third argument does not entitle petitioner to any relief.

---

7. The Board is given the power to exercise discretion and authority conferred upon the Attorney General "by law as is appropriate and necessary for the disposition of the case." 8 C.F.R. § 3.1(d)(1).

## D. PETITIONER'S DUE PROCESS CLAIMS

Finally, petitioner alleges that BIA denied him due process and equal protection under the Fourteenth Amendment. Petition at 10. Petitioner makes a similar claim in his motion for a bail hearing, arguing that his detention without such a hearing violates his due process rights. In support of this claim he cites the Third Circuit's decision in *Patel v. Zemski*, 275 F.3d 299, 314 (3d Cir.2001):

> [M]andatory detention of aliens after they have been found subject to removal but who have not yet been ordered removed because they are pursuing their administrative remedies violates their due process rights unless they have been afforded the opportunity for an individualized hearing at which they can show that they do not pose a flight risk or danger to the community.

█ Petitioner's reliance on *Patel* is misplaced. In short, *Patel* does not support petitioner's constitutional claims. The fundamental difference between *Patel* and this case is that, in this case, petitioner *has* exhausted his administrative remedies and *has* been ordered removed. Another court in this district has recognized that an alien in petitioner's position was not denied due process because he was "granted a hearing, testified and presented evidence on his own behalf, and [because] a record was created and disclosed to him." *Sciglitano v. Ashcroft*, 2002 WL 461987 (E.D.Pa. March 25, 2002). That court further concluded that "[a]lthough the IJ drew more inferences favorable to him than the BIA, that is a matter of discretion, not due process." *Id.* Unlike in *Patel*, petitioner has been afforded all of INS's administrative appellate process and points to no valid substantive due process violation. He does not have a valid claim under the Fourteenth Amendment, and is, therefore, not entitled to either habeas relief, or a bail hearing, on that basis.

## V. CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus and the motion for a bail hearing will be denied.

As a final note, because the issues in this case are straightforward and capable of resolution on the record, and because petitioner's claim is clearly non-meritorious, the Court will deny petitioner's motion for the appointment of counsel. *See United States v. Sanchez*, 2002 WL 465297, at *4 (E.D.Pa. March 21, 2002) (explaining denial of counsel request appropriate in light of straightforward, non-meritorious claims).

## ORDER

**AND NOW,** this 30th day of July 2002, upon consideration of Petitioner Dan Sulaiman's Petition for Habeas Corpus Under 28 U.S.C. § 2241 (Document No. 1, filed December 21, 2001); Petitioner's Motion for Appointment of Counsel (Document No. 19, filed April 9, 2002); Petitioner's Motion to Mandate Order/File Additional Motion to Support Claim (Document No. 25, filed July 2, 2002); the responses of the Government to the various filings; and all related submissions, for the reasons stated in the foregoing Memorandum, **IT IS ORDERED,** as follows:

1. Petitioner Dan Sulaiman's Petition for Habeas Corpus Under 28 U.S.C. § 2241 (Document No. 1, filed December 21, 2001) is **DENIED;**

2. Petitioner's Motion for Appointment of Counsel (Document No. 19, filed April 9, 2002) is **DENIED;** and

3. Petitioner's Motion to Mandate Order/File Additional Motion to Support Claim (Document No. 25, filed July 2, 2002), wherein petitioner seeks a bail hearing, is **DENIED.**

**IT IS FURTHER ORDERED** that the Court's Order dated May 28, 2002, staying deportation of petitioner is **VACATED.**