**Roger E. CHINCHILLA–JIMENEZ,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE.**

**Civil Action No. 02–2035.**

United States District Court, E.D. Pennsylvania.

Oct. 3, 2002.

Roger Edgardo Chinchilla–Jimenez, Leesport, PA, for Petitioner.

James G. Sheehan, Stephen J. Britt, Philadelphia, PA, for Respondent.

### *MEMORANDUM*

BAYLSON, District Judge.

Presently before this Court is a *pro se* Petition for Writ of Habeas Corpus ("Pet.") pursuant to 28 U.S.C. § 2241(c). The Petitioner has also filed a Motion Requesting Stay of Deportation ("Mot."). For reasons which follow, the petition and motion will be denied.

### I. *Background and Procedural History*

Roger E. Chinchilla–Jimenez ("Petitioner"), a citizen of Honduras, first entered the United States in 1986 as a tourist. *See* Pet., Ex. 1, Chinchilla, A73 130 532, Decision at 2 (BIA Sept. 17, 2001) (herein "First BIA Dec."). He visited Honduras in 1991 and returned to this country in April 1992. *Id.* On December 18, 1995, Petitioner pled guilty, in the United States District Court for the Eastern District of New York, to the charge of conspiracy to import cocaine, in violation of 21 U.S.C. § 960. *See* Pet. at 2; Gov. Resp. to Pet. for Writ of Habeas Corpus at 1 ("Resp."); *id.* The amount of cocaine involved in Petitioner's case was approximately 400 kilograms. *See* First BIA Dec. at 2; Resp. at 2. Petitioner was sentenced to twenty-seven months imprisonment, much of which he had already served, as well as five years probation. *See* First BIA Dec. at 2.

In March 1996, the INS, in return for Petitioner's past and future testimony against his drug conspirators, granted Petitioner an "S visa," *see* Pet. at 6; First BIA Dec. at 2, which permitted him to remain in the country temporarily. *See* 8 U.S.C. § 1101(a)(15)(S). However, in August 1998, Petitioner's supervised release was revoked due to violations of his parole, and Petitioner returned to prison for an additional 24 months. *See* First BIA Dec. at 2; Resp. at 2. Following Petitioner's prison term, he was taken into INS custody. Petitioner's "S visa" expired on January 22, 1999, *see* Pet. at 6; First BIA Dec. at 2, and, on July 21, 2000, the INS issued an order for Petitioner's removal, based on his conviction for an aggravated felony. *See* Mot., Ex. B, Chinchilla, A73 130 532, Final Admin. Removal Order (INS July 21, 2000).

Petitioner applied for withholding of removal pursuant to the Convention Against Torture. *See* United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 24 I.L.M. 535 (1985) ("CAT"). Petitioner asserted that, if he were returned to Honduras, he would be persecuted and possibly tortured by members of the drug cartel and that the Honduran government would not help him. *See* Pet. at 3–4; First BIA Dec. at 1. Petitioner further claimed that his political activities in Honduras in the 1980s angered government officials, who might now seek to harm him. *See* First BIA Dec. at 2. An Immigration Judge ("IJ") determined that Petitioner was not eligible for withholding of removal because he had not shown it to be more likely than not that he would face torture if returned to his homeland. *See* First BIA Dec. at 1; Resp. at 4.

■ Petitioner appealed to the Board of Immigration Appeals ("BIA"), which, on September 17, 2001, upheld the IJ's denial of withholding of removal, but granted Petitioner deferral of removal pursuant to the CAT.[1] First BIA Dec. at 5. The panel reasoned that, as a result of having testified in federal court against high-level drug offenders, Petitioner would "be exposed to danger" if returned to Honduras. *Id.* at 4. Specifically, the panel believed that the Honduran government "would not be able or inclined to protect" Petitioner from such harm, due to "rampant" corruption. *Id.* The Board found it more likely than not that, if deported to Honduras, Petitioner would face torture "with the consent or acquiescence" of governments officials. *Id.* (*quoting* 8 C.F.R. § 208.18(a)(1)).

Notwithstanding the BIA's grant of deferral, the INS continued to detain Petitioner at an Allenwood, Pennsylvania facility. Thereafter, Petitioner was transferred to the Berks County Prison. Pet. at 2. Petitioner filed the instant *habeas* petition[2] on January 18, 2002, in the Middle District of Pennsylvania, claiming that his continued detention was illegal. *See* Pet., Attachment (looseleaf). Because Petitioner was no longer at Allenwood, the Middle District court transferred the matter to this Court. *See Chinchilla–Jimenez v.*

---

1. Deferral of removal "is a temporary condition subject to further review by the INS and immediate discretionary termination by the Attorney General. Furthermore, it only guarantees deferral from deportation to the specific country where the alien is likely to be tortured." *Sulaiman v. AG,* 212 F.Supp.2d 413 at 415 n. 3 (E.D.Pa. 2002) (DuBois, J.). *See also* 8 C.F.R. 208.17(a) (regarding deferral of removal under CAT).

2. Petitioner earlier filed a petition in the United States District Court for the Eastern District of New York, while still awaiting the BIA's decision. That petition, which sought *audita querela* relief pursuant to 28 U.S.C. § 1651, was dismissed for failure to exhaust administrative remedies. *See Chinchilla v. U.S.,* No. 01–cv–3841, Order (E.D.N.Y. June 14, 2001).

*INS*, No. 3:02–cv–99, Order (M.D. Pa. April 8, 2002).

On April 24, 2002, the INS sought reconsideration of Petitioner's case before the BIA, contending that a recent decision of the Attorney General[3] warranted withdrawal of the previously granted deferral. *See* Mot., Ex. A, Chinchilla, A73 130 532, Decision at 1 (BIA June 28, 2002) ("Second BIA Dec."). On June 28, 2002, the BIA vacated its prior decision and withdrew Petitioner's deferral of removal. *Id.* at 2. In its decision, the panel considered a State Department report regarding human rights abuses in Honduras, but found that this report was insufficient to meet Petitioner's burden of proof. *Id.* Further, the BIA found insufficient evidence to establish that Petitioner would face retribution for his 1980s political activities. The Board noted that no threats or actions were taken against Petitioner when he visited Honduras in 1991. *Id.* Accordingly, the BIA determined that Petitioner had "failed to meet his burden of establishing that it is more likely than not that he will be tortured by, or with the consent or acquiescence of, government officials" if returned to Honduras. *Id.*

On August 30, 2002, Petitioner filed a Motion Requesting Stay of Deportation, pending resolution of the instant petition.

## II. *Legal Standard and Jurisdiction*

■ This Court has jurisdiction to decide *habeas corpus* petitions filed by aliens subject to deportation. *See* 28 U.S.C. § 2241; *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (concluding " § 2241 *habeas corpus* proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"); *INS v. St. Cyr.*, 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (holding "habeas jurisdiction under § 2241 was not repealed" by Antiterrorism and Effective Death Penalty Act of 1996 or Illegal Immigration Reform and Immigrant Responsibility Act of 1996); *Chmakov v. Blackman*, 266 F.3d 210, 216 (3d Cir.2001).

■ However, this Court's review of administrative immigration decisions is limited to purely legal determinations, and does not encompass the BIA's factual findings. *See Sulaiman v. AG*, 212 F.Supp.2d 413, 416 (E.D.Pa. 2002) (DuBois, J.) (stating standard of review in criminal-alien *habeas* cases is "limited to questions of law"); *Bradshaw v. INS*, 2002 WL 1160832, at *1, No. 01–cv–5221, 2002 U.S. Dist. LEXIS 9722, at *4 (E.D. Pa. June 3, 2002) (same). The Third Circuit has yet to rule on the proper standard of review in such cases, but the majority of circuits have permitted review of purely legal questions only. *See Sol v. INS*, 274 F.3d 648, 651 (2d Cir.2001) (holding *habeas* statute provides for review of only "statutory or constitutional errors"); *Bowrin v. INS*, 194 F.3d 483, 490 (4th Cir.1999) (holding only "questions of pure law will be considered on § 2241 habeas review [and] review of factual or discretionary issues is prohibited").

## III. *Discussion*

■ Petitioner has not identified any specific violation of federal law as a result of his detention or impending deportation.[4]

---

**3.** That decision, *In re Y–L–*, 2002 WL 358818, 23 I. & N. Dec. 270 (A.G. March 5, 2002), explained that "[v]iolence committed by individuals over whom the government has no reasonable control does not implicate the [CAT]."

**4.** Petitioner filled in the blank pertaining to his basis for *habeas* relief as follows:

On September 17, 2001, the Board of Immigration Appeals (BIA) grant [*sic* ] me a "deferral of removal" pursuant to the Convention Against Torture (CAT) (please see Exhibit 1). I am under INS custody since June 2nd, 2000. I cannot be deported to my native Honduras for the conditions of corruption levels rampant throughout the law enforcement infrastructure and the in-

As this Court's review is limited to conclusions of law, the question presented is whether the June 28, 2002, BIA decision, denying Petitioner relief under the CAT, violated federal law or the United States Constitution.

The Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*, renders certain classes of aliens deportable. *See* 8 U.S.C. § 1227. With respect to drug offenders, the Act provides:

> *Any alien* who at any time after admission has been *convicted* of a violation of (*or a conspiracy* or attempt to violate) *any law* or regulation of a State, the United States, or a foreign country *relating to a controlled substance* (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, *is deportable.*

8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added). *See also Amoroso v. District Dir., INS,* No. 00–cv–1449, 2000 U.S. Dist. LEXIS 7554, at *9–10 (E.D.Pa. May 30, 2000). Petitioner was convicted of conspiracy to import cocaine. *See* 21 U.S.C. § 960. Thus, he is deportable.

Nevertheless, a deportable alien may apply for relief under the CAT. *See* 8 C.F.R. § 208.16–.18. Torture is defined in the immigration regulations[5] as any act "by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person ... by or at the instigation of or *with the consent or acquiescence of a public official* or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1) (emphasis added). The applicant has the burden of proving eligibility for CAT relief, by showing "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). If the applicant meets this burden, he is entitled to either withholding or deferral of removal. *See* 8 C.F.R. § 208.16(c)(4).

■ Withholding of removal must be denied where the alien has been convicted of a "particularly serious crime," which is defined as an aggravated felony[6] for which the alien has been "sentenced to an aggregate term of imprisonment of at least 5 years."[7] 8 U.S.C. § 1231(b)(3)(B). Conspiracy to import cocaine, *see* 21 U.S.C. § 960, constitutes an "aggravated felony." *See, e.g., United States v. de la Luz Angel-Martinez,* 988 F.Supp. 475, 477, 480 n. 5 (D.N.J.1997) (noting defendant who pled guilty to importation of heroin, in violation of 21 U.S.C. §§ 952(a) and 960, is deportable based on conviction for aggravated felony).

In its June 28, 2002 decision, the BIA determined that Petitioner had committed a "particularly serious crime," and was, therefore, ineligible for withholding of removal. Second BIA Dec. at 2. The Board

---

capacity of his entities [*sic*] to protect me after has been [*sic*] testified against high level drug dealers in United States courts. Pet. a 3–4.

5. Following ratification of the CAT, Congress directed the INS to pass regulations implementing the United States' obligations under the Convention. *See* Foreign Affairs Reform and Restructuring Act of 1998, Pub.L. No. 105–277, Div. G, 112 Stat. 2681 (Oct. 21, 1998).

6. The term "aggravated felony" includes

illicit trafficking in a controlled substance (as defined in section 102 of the Controlled Substances Act [21 U.S.C. § 802]), including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code).

8 U.S.C. § 1101(a)(43)(B) (2002).

7. The Attorney General may determine that, "notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B).

noted that Petitioner's offense involved approximately 400 kilograms of cocaine. *See id.* at 1. For his crime, Petitioner was sentenced to twenty-seven months imprisonment, plus five years probation. *See* First BIA Dec. at 2. Accordingly, the BIA's finding that Petitioner was ineligible for withholding of removal was correct as a matter of law. *See In re Y–L–,* 2002 WL 358818, 23 I. & N. Dec. 270 (A.G. March 5, 2002) (stating aggravated felonies involving unlawful trafficking in controlled substances "presumptively" constitute "particularly serious crimes").

An alien who has been found eligible for CAT relief, but ineligible for withholding of removal, "shall be granted deferral of removal;" such deferral would bar the INS from removing the alien to that country where he or she is likely to be tortured. 8 C.F.R. § 208.17(a). In determining Petitioner's eligibility for CAT relief, the BIA was required to consider all relevant evidence presented by Petitioner.

In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:

(i) Evidence of past torture inflicted upon the applicant;

(ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;

(iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

(iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3). The BIA considered Petitioner's testimony and other evidence submitted, and justified its decision on several grounds.

First, the Board considered a State Department report concerning government-condoned human rights abuses in Honduras. The BIA found that this official report was insufficient to meet Petitioner's burden of proof, in that it did not establish actual government acquiescence in torture. Rather, the report showed only that certain officials may undertake corrupt activity in an "unofficial capacity." Second BIA Dec. at 2. This was an appropriate basis on which to rule that the report did not fulfill Petitioner's burden. *See Julmiste v. Ashcroft,* 212 F.Supp.2d 341, 348 (D.N.J.2002) (finding, in Haitian immigrant's *habeas* challenge to deportation, that State Department report describing Haiti as a "poor, unstable, war torn country" did not "suggest that the Petitioner, himself, will personally suffer torture upon return to Haiti"); *In re Y–L–,* 23 I. & N. Dec. at 270 ("Violence committed by individuals over whom the government has no reasonable control does not implicate the [CAT]"). *See also Sevoian v. Ashcroft,* 290 F.3d 166, 175–76 (3d Cir.2002) (holding, in non-*habeas* petition by Georgian citizen for review of BIA's refusal to reopen removal proceedings, that State Department report on human rights conditions in Georgia did not establish *prima facie* case for CAT relief).

Next, the BIA found that Petitioner had failed to establish that he would—more likely than not—face retribution for his political activities in Honduras in the 1980s. The Board based this determination on the lack of evidence presented, as well as the fact that no threats or actions were taken against Petitioner when he visited Honduras in 1991. *See* Second BIA Dec. at 2. As no error of law is suggested relative to this finding, it cannot be disturbed.

Finally, Petitioner argued before the BIA, as he does in this Court, that he has a justifiable "fear" of persecution, as a

result of having testified against "high level drug dealers." Pet. at 7–1. Despite Petitioner's fear of reprisal by drug lords, the BIA concluded that he had not presented evidence sufficient to show that it is more likely than not that he will be tortured. *Id.* That determination is a finding of fact, which is beyond the present scope of review. As the BIA's decision contains no apparent error of law, it must be affirmed.

Petitioner has not shown that his detainment and eventual removal are in violation of federal law or the United States Constitution. Accordingly, the Petition for Writ of Habeas Corpus will be denied and dismissed. Likewise, Petitioner's Motion Requesting Stay of Deportation will be denied. An appropriate Order follows.

### ORDER

AND NOW, this ___ day of October, 2002, it is ORDERED that:

1. Petitioner's Petition for Writ of Habeas Corpus is DENIED AND DISMISSED; and

2. Petitioner's Motion Requesting Stay of Deportation is DENIED.