**Jorge Yamel BUILES, Petitioner**

v.

**George NYE, Warden Snyder County Prison, et al., Respondents**

No. CIV.A.1:CV–02–0420.

United States District Court, M.D. Pennsylvania.

Jan. 2, 2003.

Lloyd George Parry, Davis, Parry & Tyler, Philadelphia, PA, Steven H. Goldblatt, Washington, DC, for Petitioner.

Joseph J. Terz, Daryl F. Bloom, U.S. Attorney's Office, Harrisburg, PA, for Respondents.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Petitioner, Jorge Yamel Builes, a citizen of Columbia, has filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2241, contesting a final order of removal issued by the Immigration and Naturalization Service (INS) deporting him to Columbia. The petition is also styled as a civil rights complaint under 28 U.S.C. § 1983 for injunctive relief. The INS initiated removal proceedings against Builes after his conviction for conspiracy to distribute heroin.

The petition makes the following three claims. First, Petitioner's removal to Columbia would violate his right to substantive due process because he will be killed by drug traffickers upon his return as a result of his cooperation with American

prosecutors. Second, his removal would violate the Eighth Amendment for the same reason. Third, the removal order violates the Convention Against Torture (CAT) and its implementing regulations.

In part, Builes seeks an injunction against his removal to Columbia. The petition/complaint also seeks a declaratory judgment that the Attorney General's opinion in *In re Y–L–*, 23 I & N Dec. 270, 2002 WL 358818 (2002), violates the CAT and its implementing regulations.

## II. *Background.*

Builes is a native and citizen of Columbia. He never became a permanent resident alien. After he entered the United States in 1984, he obtained temporary residency status. (Doc. 20, Exhibits to Respondents' response, exhibit A, immigration judge's oral decision, p. 1). Builes worked at various jobs, including running a trucking company that went bankrupt. After the failure of the trucking company, Petitioner turned to drug dealing. (*Id.*, p. 3). However, he had voluntarily stopped this activity about six months before his arrest, as evidenced by the absence of criminal activity while he was under surveillance during this period of time. (*Id.*).

In 1998, Petitioner was indicted in the United States District Court for the Eastern District of Wisconsin for conspiracy to distribute heroin in violation of 18 U.S.C. §§ 846 and 841(a)(1). (Doc. 22, exhibit D, sentencing hearing at pp. 2–3). He agreed to cooperate in a Miami federal prosecution of two major drug dealers, members of the same drug-trafficking organization Petitioner had worked for. While he was imprisoned in Miami awaiting their trial, one of them threatened Petitioner and his family if he did testify. At the time,

Builes had six sisters and five brothers, most living in Columbia (along with his parents). (Doc. 20, exhibit A, immigration judge's oral decision, pp. 3–4). Builes testified and his testimony was crucial to the convictions of the drug traffickers. (*Id.*, pp. 2–3).

In April 1999, Petitioner was sentenced in the Eastern District of Wisconsin. At the sentencing hearing, the prosecutor stated that Builes had cooperated fully in the Miami prosecution, providing extensive detail on the Columbian trafficking organization, and that he believed the threats against Petitioner and his family were credible. (Doc. 22, Exhibit D, sentencing hearing at pp. 14, 15). He recommended a downward departure on the bases of Builes' cooperation and the threats to him and his family. (*Id.*, p. 15). Granting a downward departure, the court imposed a sentence of thirty-three months when the guidelines range called for eight to ten years. (Doc. 20, exhibit A, immigration judge's oral decision, p. 2).

Petitioner was placed in expedited removal proceedings and on October 27, 1999, ordered removed from the United States. On November 1, 2000, Builes filed an application under 8 U.S.C. § 1231(b)(3), INA § 241(b)(3), for withholding of removal.[1] He also sought withholding of removal under the CAT.

A hearing was held before an immigration judge. The immigration judge denied withholding under the CAT but granted it under section 1231(b)(3). In regard to the CAT claim, the immigration judge concluded that the danger to Petitioner's life is real. He found that the Columbian drug traffickers did make the threats. As he stated, "The threats have been made.

---

1. Under section 1231(b)(3), an alien cannot be removed to a country where the Attorney General believes the alien's life or freedom would be threatened "because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

They have been taken seriously at all levels of our government . . ." (Doc. 20, exhibit A, immigration judge's oral decision, p. 9). Additionally, he found that the traffickers have the power to carry out the threat because of the political conditions in Columbia. Relying on the State Department's 1999 country report on human rights, he noted that the government was unable to control the activities of paramilitary and rebel groups nor could it control the drug traffickers. As a result, many extrajudicial killings happen, often with government security forces collaborating in them. The judiciary is either bribed or threatened into ineffectiveness. (*Id.,* pp. 9–11).[2]

Nonetheless, the immigration judge concluded that Builes had no CAT claim because the CAT requires government involvement in the torture and Petitioner had not shown that the government would be involved, only that it would not be able to prevent Builes' death, albeit a few corrupt government officials would facilitate the death. (*Id.,* pp. 17–19).

In regard to withholding under section 1231(b)(3), the immigration judge decided that Builes' drug conviction was not "a particularly serious crime" making him "a danger to the community" that would have barred relief under the section.[3] The immigration judge reasoned that the crime was not particularly serious by taking into account Petitioner's full cooperation after his arrest, his reduced sentence compared to the sentence he could have received, and the extent of his cooperation indicating he was a changed man who was not a danger to the community. (*Id.,* pp. 21–23). The immigration judge therefore granted

withholding under section 1231(b)(3). The INS appealed to the Board of Immigration Appeals (BIA).

In the meantime, one of Petitioner's sisters and one of his brothers were murdered in Columbia. As evidenced by autopsy certificates Petitioner submitted as part of a motion to supplement the record on appeal (doc. 22, exhibit B), Sofia Builes Giraldo and Jose Abelardo Builes died by homicide within about a week of each other. According to Petitioner's affidavit submitted as part of the motion, his remaining family in Columbia told him that they both died the same way, shot twice in the head. Sofia was shot on her doorstep on October 24, 2001, and Jose as he walked home on October 31, 2001.

On February 25, 2002, the BIA reversed the immigration judge's decision and ordered removal, reasoning that Builes' cooperation after the offense did not affect the serious nature of the crime, distribution of a dangerous drug in large quantities. It therefore concluded that section 1231(b)(3)(B)(ii) precluded Petitioner from withholding of removal. (Doc. 20, exhibit B, p. 3). The BIA also decided that Builes was not entitled to relief under the CAT. It granted his motion to supplement the record, treated as a motion to reopen, but ruled that the evidence did not make his CAT claim meritorious because Petitioner did not show that the Columbian government would consent to, or acquiesce in, his torture, concluding that the government's inability to control the drug traffickers was not sufficient and that there was no evidence that the government willfully accepted the torture and death of those who testify against drug traffickers. (*Id.,* p. 3–

---

**2.** The 2002 country report on Columbia is not significantly different.

**3.** Withholding of removal under section 1231(b)(3) is not available to an alien who has

committed "a particularly serious crime" that makes him "a danger to the community." *See* 8 U.S.C. § 1231(b)(3)(B)(ii).

4). The BIA reached this conclusion while also finding that: (1) "the drug cartels bribe government officials"; (2) the cartels "exert influence over ... social, political, and economic society;" and (3) "government officials are powerless to stop the violence in society." (*Id.*, p. 4).

One BIA member filed a concurring opinion in which he stated:

This is a troubling case. The respondent is a convicted drug trafficker who cooperated with the United States government. He has established that it is more likely than not that he faces a gruesome, tortuous death at the hands of drug interests in Columbia. His brother and sister apparently were murdered in Columbia. There is no serious contention that the Columbian government will be able to protect him from this fate. Yet, I must reluctantly agree with the majority that the respondent is ineligible for asylum and withholding of removal and does not qualify for protection under the Convention Against Torture ("CAT") as we construed it in *Matter of S–V–*, Interim Decision 3430 (BIA 2000).

.    .    .    .    .

Therefore, we appear to have no choice but to order the respondent returned to his likely death in Columbia.

(*Id.*, concurring opinion, p. 1, 2).

On March 15, 2002, Petitioner filed this petition for a writ of habeas corpus. Respondents were granted several extensions of time to file their opposition because the parties were trying to resolve the case. However, they could not do so and eventually Respondents filed their opposition on September 30, 2002.

### III. *Standard of Review.*

■ An alien subject to an INS order of removal can invoke section 2241 for judicial review of the order. *See INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Steele v. Blackman,* 236 F.3d 130 (3d Cir.2001). However, section 2241 only "encompasses claims that one 'is in custody in violation of the Constitution or laws or treaties of the United States'". 28 U.S.C. § 2241(c)(3). Hence, section 2241 is limited to claims that the INS has violated the Constitution, *see Xu Cheng Liang v. INS,* 206 F.3d 308 (3d Cir.2000), *cert. denied sub nom., Rodriguez v. INS,* 533 U.S. 949, 121 S.Ct. 2590, 150 L.Ed.2d 749 (2001); *Sandoval v. Reno,* 166 F.3d 225, 238 (3d Cir.1999); *Chmakov v. Blackman,* 266 F.3d 210 (3d Cir.2001), or that it has violated the statutory law governing immigration, *St. Cyr, supra,* or its own regulations. *See Lee Moi Chong v. District Director,* 264 F.3d 378 (3d Cir. 2001) (reviewing the petitioner's constitutional, statutory, and regulatory claims presented on habeas to the district court). In the latter two circumstances, the claim must be one of statutory or regulatory error in the sense that the INS based its decision on a misinterpretation of the statute or regulation at issue. In other words, section 2241 is limited to legal errors or pure questions of law; it cannot be used to assert a claim that merely reargues the alien's position on the merits before the INS. *See generally, Carranza v. INS,* 277 F.3d 65, 71 (1st Cir.2002)("Federal courts ... retain jurisdiction over habeas petitions brought by aliens facing removal to the extent that those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated.").

### IV. *Discussion.*

#### A. *The Eighth Amendment Claim.*

■ Petitioner asserts his removal would violate the Eighth Amendment. We reject this claim. We acknowledge Peti-

tioner's contention that these are extraordinary circumstances, but we believe the Eighth Amendment does not apply here because removal proceedings are not criminal in nature. *See Briseno v. INS,* 192 F.3d 1320, 1323 (9th Cir.1999).

### B. *The CAT Claim.*

Petitioner contends the BIA erred in not withholding his removal under the CAT, asserting that it imposed upon him a higher standard of proof than required by the regulations implementing the CAT and the language of the CAT itself. In his view, the BIA improperly required him to provide proof of acquiescence by the Columbian government in a specific act of torture that has not yet occurred, his future murder. He contends no alien could ever provide this degree of specificity and, in fact, the CAT and implementing regulations do not.

The pertinent regulations are as follows. Under 8 C.F.R. § 208.16(c)(2), Builes has the burden of proving that it "is more likely than not" that he will be tortured (killed in Builes' case) if removed to Columbia. Under 8 C.F.R. § 208.18(a)(1), the torture must be accomplished "with the consent or acquiescence of a public official or other person acting in an official capacity." Under 8 C.F.R. § 208.18(a)(7), "[a]cquiescence ... requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity."

Petitioner cites two treaty obligations. Under Art. 3, § 1, of the CAT, no signatory country "shall expel, return ... or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being sub-

jected to torture." Under Art. 3, § 2, of the CAT, the BIA must "take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights." [4]

Petitioner argues that the treaty language does not require specific proof of future torture, only "substantial grounds for believing" so, based on "all relevant considerations including ... a consistent pattern" of human-rights violations. Hence, the BIA erroneously imposed on him the duty of showing such direct evidence.

He also argues that the evidence of country conditions establish that Columbia had acquiesced in his murder. He argues that acquiescence is established when, as found by the BIA: (1) "the drug cartels 'bribe government officials' and 'exert influence over the government'"; (2) "the drug cartels perform acts of torture," and (3) "the 'government officials are powerless to stop the violence in society.'" (Petitioner's memorandum of law in support of temporary restraining order, p. 9)(citing BIA decision at p. 4). In accord with the treaty language, he maintains that this generalized evidence is enough without having to show "specific evidence of government complicity in acts that have yet to occur." (Petitioner's reply brief at p. 18–19).

Moreover, he contends that a government that has been corrupted by bribes and by fear cannot be considered as a single entity. Thus, even if some members of the Columbian government are trying to enforce the law, it has in effect been infiltrated and taken over by the drug cartels to such an extent that the

---

**4.** 8 C.F.R. § 208.16(c)(3) is essentially the same as Art. 3, § 2 but specifies more factors to be considered as part of the duty to consider all relevant evidence.

actions of the drug traffickers become the actions of the government, and it is thus the government that accepts the cartel-inflicted torture. (*Id.* at p. 20).

In opposition, Respondents argue that we lack jurisdiction to entertain Builes' CAT claim because the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), Pub.L. No. 105–277, 112 Stat. 2681–822, the CAT's implementing statute, in section 2242(d) preludes review of a CAT claim except through a petition for review under 8 U.S.C. § 1252. In part, they cite *Diakite v. INS*, 179 F.3d 553, 554 (7th Cir.1999); *Qian Ou Xian v. INS*, No. 4:CV–02–717 (M.D.Pa. July 8, 2002)(Muir, J.); and *Muhammed v. Ashcroft*, No. 1:CV–02–1063 (M.D.Pa. Aug. 21, 2002)(Rambo, J.).

We disagree with Respondents' jurisdictional argument. As noted above, we have jurisdiction under section 2241 for claims that the INS has misinterpreted a statute or a regulation. Here, Builes argues that the INS misinterpreted the CAT and the implementing regulations when, if they are properly construed, the evidence the BIA accepted was sufficient to meet their requirements.[5] This legal claim is cognizable under section 2241, *see Sulaiman v. Attorney General*, 212 F.Supp.2d 413 (E.D.Pa.2002)(reviewing legal claims of regulatory error under the CAT); *Julmiste v. Ashcroft*, 212 F.Supp.2d 341 (D.N.J.2002)(same); *Chinchilla–Jimenez v. INS*, 226 F.Supp.2d 680, 683, (E.D.Pa. 2002), even though a claim contesting the factual merits of a CAT claim would not, as both *Qian Ou Xian, supra,* and *Muhammed, supra,* appear to be.

However, on the merits of the claim, we must agree with Respondents. We do not believe that evidence of widespread bribery, corruption and intimidation of government officials, or of the government's powerlessness to prevent torture, satisfies Petitioner's burden of showing acquiescence by the government in torture. As the Attorney General noted in *In re Y–L–*, 23 I & N Dec. 270, 2002 WL 358818 (2002), acquiescence must be more than the awareness by government officials of torture and their inability to prevent it; they must willfully accept it, *id.* at 283, 2002 WL 358818, or at least turn a blind eye. *Ontunez–Tursios v. Ashcroft*, 303 F.3d 341, 354 (5th Cir.2002). Even if a substantial number of government officials are corrupt, we cannot conclude that others in the government are failing to resist such conduct.

Petitioner's problem is not that the INS has imposed a higher standard than required by the CAT and its implementing regulations. The INS has not required specific proof that Builes will be tortured. Instead, it has noted that Builes had failed to show that the government would acquiesce in his torture. In this light, Builes' problem is with the treaty language, not the INS's interpretation of it.

We therefore reject the CAT claim.[6]

### C. The Substantive Due Process Claim.

Petitioner also claims that his removal to Columbia would violate his right to substantive due process. For whatever reason, Respondents did not oppose this

---

**5.** The CAT is a treaty but still a law of the United States, specifically mentioned in section 2241.

**6.** Based on the foregoing and our citation to the Attorney General's opinion in *In re Y–L–*,

we will not issue a judgment declaring that decision violative of the CAT and implementing regulations, assuming we had such authority (which we do not think we do).

claim. Based on Petitioner's analysis, we conclude the claim has merit.

■■ Builes relies on the state-created danger exception to the general rule that the Due Process Clause imposes no obligation on the state to protect an individual from harm inflicted by private parties. As stated by the Third Circuit in *Kneipp v. Tedder,* 95 F.3d 1199, 1208 (3d Cir.1996), the exception has four elements. First, "the harm" must be "foreseeable and fairly direct." Second, the state actors are acting "in willful disregard for the safety of the plaintiff." Third, "there existed some relationship between the state and the plaintiff." Finally, "the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur."

As Petitioner notes, the first element is clearly satisfied. Builes has received threats on his life and the lives of his family from the drug-trafficking organization. In fact, his brother and sister were killed execution-style, probably as a result of his cooperation with United States prosecutors. Therefore, if Petitioner is removed to Columbia, his murder is foreseeable and fairly direct.

■■■ The second element is also met. This element requires us to apply a "shocks the conscience" test to the INS's actions. *See Nicini v. Morra,* 212 F.3d 798, 809–10 (3d Cir.2000)(en banc); *Brozusky v. Hanover Township,* 222 F.Supp.2d 606, 613–14 (M.D.Pa.2002). In turn, because the INS has had time to reflect on its decision to remove Petitioner despite the sure danger to his life, we will examine its conduct under the standard of deliberate indifference. *Nicini, supra,* 212 F.3d at 810–11. In part, an official is deliberately indifferent if he knows of and disregards an excessive risk to the health or safety of an individual under his control. *Id.* at 811. Here, the INS knows of the threat to Builes' life. Hence, it is showing deliberate indifference in its longstanding attempt to remove him.

■■ The third element is satisfied as well because of the relationship between the INS and the Petitioner. The INS is holding Builes in its custody and control under its authority to detain aliens no longer lawfully in the country; further, it intends to use that custody and control to remove him to Columbia, where likely death awaits him.

■■ The final element is also satisfied. Returning Petitioner to Columbia creates an opportunity for the Columbian drug traffickers to kill Petitioner that otherwise would not have existed.

We will therefore grant relief that prohibits the government from removing Petitioner from the United States. Our decision is supported by at least one other district court that granted relief under similar circumstances. *See Rosciano v. Sonchik,* No. CIV 01–472–PHX–FJM (D.Ariz. Sept. 10, 2002).

### ORDER

AND NOW, this 2nd day of January, 2003, it is ordered that:

1. The petition for a writ of habeas corpus is granted.

2. Respondents shall release Petitioner, Jorge Yamel Builes, from confinement.

3. Respondents and their agents are hereby permanently enjoined from removing or deporting Petitioner to Columbia or any other country.

4. The Clerk of Court shall close this file.