**Patrick St. Aubyn LAWSON Petitioner**

v.

**Susan GERLINSKI Respondent**

**No. 3:CV–02–2366.**

United States District Court,
M.D. Pennsylvania.

Aug. 20, 2004.

Patrick St. Aubyn Lawson, York, PA, for Plaintiff.

[1.] Mr. Lawson has also asserted that he is not subject to removal because he is actually a national of the United States. As will be

, Daryl Ford Bloom, U.S. Attorney's Office, Harrisburg, PA, for Defendant.

## MEMORANDUM

VANASKIE, Chief Judge.

Petitioner Patrick St. Aubyn Lawson has brought this habeas corpus proceeding under 28 U.S.C. § 2241 in order to set aside a final order of removal and to secure release from confinement pending adjudication of his claims. Mr. Lawson's challenge to the removal order rests largely on his claim of a substantial risk of harm if he is deported to his native Jamaica.[1] He asserts that his cooperation with law enforcement authorities in the prosecution of a marijuana trafficking scheme exposes him to retaliation in Jamaica. His challenge to his prolonged detention rests upon the absence of evidence of flight risk or danger to the community.

Having carefully considered the parties' documentary submissions, I find that Lawson has presented sufficient evidence to warrant a hearing on the question of whether his cooperation with the government has now exposed him to a substantial risk of death or serious bodily harm if deported to Jamaica. I further find that his continuing detention is not supported by evidence of flight risk or danger to the community. Accordingly, an evidentiary hearing will be scheduled, and Lawson will be ordered released from confinement, subject to appropriate conditions of supervision.

## I. BACKGROUND

Lawson was admitted to the United States on April 14, 1970, when he was 16

discussed *infra,* this contention is without merit.

years old He is a native and citizen of Jamaica, and is not a citizen of the United States. He enjoys, however, the status of a lawful permanent resident in the United States. In the mid 1970's, Lawson, as a lawful permanent resident, registered for the armed services draft under the Selective Service Act. Now 50 years old, Lawson has three children who are U.S. citizens, and his mother is a naturalized U.S. citizen.

In 1999, Lawson was indicted in the Middle District of Florida on drug trafficking charges concerning the importation of marijuana.[2] He pled guilty to conspiracy to possess with intent to distribute marijuana. On March 22, 2000, Lawson was sentenced to a prison term of 87 months and a supervised release term of 60 months.[3]

On May 24, 2000, the Immigration and Naturalization Service ("INS") commenced removal proceedings against Lawson by issuing a Notice to Appear.[4] The INS charged that Lawson was subject to removal from the United States under sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii) and (a)(2)(B)(i).[5]

Lawson remained in the custody of the Bureau of Prisons under his judgment of conviction while the INS was pursuing his removal from the United States. On March 21, 2001 the prosecution moved pursuant to Rule 35 of the Federal Rules of Criminal Procedure for a reduction of Lawson's sentence based upon his substantial assistance. In a supplemental memorandum in support of the motion for reduction in sentence filed on August 3, 2001, Assistant United States Attorney Dale R. Campion represented that Lawson's "cooperation contributed, in part, to an indictment being returned against a defendant who remains a fugitive and to guilty pleas entered by 3—4 defendants in federal criminal cases in the Southern District of New York." [6] Attorney Campion further represented that Lawson "also executed an affidavit in support of extradition of another federal fugitive which in all likelihood exposes the defendant and his family to risk of retaliation." The government recommended reducing the total offense level of 29 to a total offense level of 23. With a criminal history category at level I, the

---

2. A copy of the indictment is included as part of Exhibit "B" to the Response to Order to Show Cause, filed in this matter on February 3, 2003, Dkt. Entry 10.

3. A copy of the Judgment and Commitment Order of the United States District Court for the Middle District of Florida is included as part of Exhibit "B" to the Response to Order to Show Cause, filed on February 3, 2003, Dkt. Entry 10.

4. On March 1, 2003, the functions of the INS were assumed by the Department of Homeland Security. Within the Department, the Bureau of Immigration and Customs Enforcement now has the duty of investigating and enforcing immigration laws within the borders of the United States. For sake of simplicity, this opinion will refer to the INS as the immigration enforcement authority.

Moreover, for sake of clarity, the Respondent in this proceeding will be referred to as the INS.

5. Section 237(a)(2)(A)(iii) of the INA authorizes removal of any alien convicted of an aggravated felony, and § 237(a)(2)(B)(i) provides for removal of an alien convicted of a controlled substance offense. Aggravated felonies are defined as including "illicit trafficking in a controlled substance ..., including a drug trafficking crime ...." 8 U.S.C. § 1101(a)(43)(B). The Notice to Appear relies on this definition of an aggravated felony in charging Lawson with removal.

6. A copy of the Supplemental Memorandum in Support of Motion for Reduction in Sentence is attached to Lawson's habeas corpus petition filed in this matter, Dkt. Entry 1.

resulting guideline range for Lawson was lowered from 87–108 months to 46–57 months.

By Order dated August 15, 2001, the government's motion for a reduction of sentence was granted. The District Judge amended the judgment in the case by reducing the term of imprisonment to 48 months.

Lawson interjected into the removal proceedings the Assistant United States Attorney's statement that Lawson and his family were at risk of retaliation as a result of Lawson's cooperation. Lawson, however, did not advance a claim under the Convention Against Torture Observing that Lawson was ineligible for cancellation of removal because his drug trafficking crime qualified as an aggravated felony, the Immigration Judge, in an oral decision entered on December 4, 2001, directed that Lawson be removed to Jamaica. In the course of issuing his decision, the Immigration Judge stated:

> The Court is constrained on this record to order the respondent removed to Jamaica, but recognizes that there may be other administrative vehicles open to the respondent despite the removal order, assuming it is sustained on appeal, or to seek administrative relief from the [INS] in the form of "deferred action" or being placed under an order of supervision if the [INS] would be so inclined, because of any risks that the respondent may face or because of the public interest or otherwise .... [T]his Court has no jurisdiction to entertain any application for prosecutorial discretion in the

form of "deferred action" or to defer the execution of an order of removal and place the respondent under a [sic] "order of supervision." The only way in which this could be sought would be by the respondent to apply for same directly to the appropriate enforcement branches of the [INS].

Oral Decision of the Immigration Judge at 4.

On October 31, 2002, while his appeal to the Board of Immigration Appeals was still pending, Lawson wrote to the INS, requesting "deferred action." [7] Lawson's request for deferred action was based upon his fear for his life if returned to Jamaica based upon the assistance he provided to the government to secure convictions of co-conspirators.

On November 21, 2002, the Board of Immigration Appeals affirmed, without opinion, the Immigration Judge's decision directing the removal of Lawson. Thus, the Immigration Judge's decision became the final agency determination.

On December 30, 2002, while still in the custody of the Bureau of Prisons on his drug trafficking conviction, Lawson filed in this Court a habeas corpus petition under 28 U.S.C. § 2241. In his *pro se* submission, Lawson renewed his request for "administrative relief" from the final order of removal. Lawson also requested release from confinement.

On January 24, 2003, Lawson moved for release pending a decision on his habeas corpus petition. (Dkt. Entry 7.) At the time he filed this motion, Lawson remained in the custody of the Bureau of

---

**7.** As explained in *Barahona–Gomez v. Reno,* 236 F.3d 1115, 1119 n. 3 (9th Cir.2001):

"Deferred action" refers to an exercise of administrative discretion by the INS district director under which the INS takes no action "to proceed against an apparently deportable alien" based on a prescribed set of

factors generally related to humanitarian grounds. The INS may "decline to institute proceedings, terminate proceedings, or decline to execute a final order of deportation." "A case may be selected for deferred action treatment at any stage of the administrative process." (Citations omitted.)

Prisons, serving his sentence for drug trafficking. Consequently, Magistrate Judge Blewitt, to whom this matter had been referred, dismissed the request for release.

On or about February 12, 2003, Lawson completed service of his sentence, and custody was transferred to the INS. On February 27, 2003, Lawson filed in this Court a second habeas corpus petition, docketed to No. 3:03–CV–0364.[8]

On March 14, 2003, the Court was informed that Lawson's deportation was imminent. As of that date, the INS had not acted upon Lawson's request for deferred action. By Memorandum and Order entered on March 17, 2004, this Court enjoined the removal of Lawson and directed that the INS decide the request for deferred action.[9]

By letter dated April 9, 2003, Lawson was informed that his request for deferred action was denied. In the letter of April 9, 2003, the INS District Director explained:

As a member of a class of removable aliens who have been deemed a priority, namely as a convicted drug trafficker, you must clear a threshold which is extremely high in order to qualify for relief. The positive elements of your application are considerable. Your cooperation with federal law enforcement authorities is noted. However, federal regulations allow for individuals who have assisted law enforcement agencies to remain in the United States. By petitioning an individual for an "S" visa, law enforcement agencies may request that certain individual's [sic] be allowed to remain in the United States due to the cooperation they have provided. As there are only 200 such visas available annually, the criteria that must be met

to qualify for such a petition is considerable. This office has been notified that a petition will not be filed on your behalf by any such entity.

\* \* \* \* \* \*

Therefore, after thoroughly reviewing your entire record, including the assertions you have put forth in this request for deferred action, I have failed to discover how this instance is differentiated from a countless number of other individuals who have also assisted law enforcement agencies. There does not seem to be any countervailing equities that would greatly distinguish your case. Thusly, the threshold to qualify for this remedy has not been met.

As a result of the denial of deferred action, Lawson renewed his request for habeas corpus relief. Among the arguments asserted by Lawson was that removal to a country where Lawson's life would be at risk violated the substantive component of the Fifth Amendment Due Process Clause. Lawson also moved for release pending a decision on his habeas corpus petition.

In December of 2003, the INS undertook a review of Lawson's continuing detention. In support of the decision to continue detention, the INS District Director wrote:

After carefully weighing the factors pertaining to your case, you will not be released from ... custody ... because you have not demonstrated that you would not present a threat to society if you were released. In fact, a review of your file reveals that you were convicted of the following, Title 21 Viola-

---

8. This second habeas corpus proceeding was consolidated with the first.

9. By Order dated March 31, 2003, an INS Emergency Motion to Lift Stay of Removal and Stay of Litigation was denied.

tions/STAY of DEPORT w-final order in place.

You have not provided sufficient evidence to show that you would not present a flight risk if you were released. It is not clearly evident that you would appear as required for removal. You currently have a stay of removal and a final Order of Deport. After the lift of your stay of deport, a new review will be conducted on your case.[10]

On January 13, 2004, Respondent filed a reply to Lawson's supplemental submissions. On February 20, 2004, Lawson filed an amendment to his habeas corpus petition, claiming for the first time to be a national of the United States. This assertion is based upon the fact that he registered for the draft during the Vietnam War. (Dkt. Entry 38.)

## II. DISCUSSION

### A. Lawson's Claim to be a United States "National"

■ In February of 2004, nearly four years after the commencement of removal proceedings, Lawson claimed that he could not be removed because he was, in fact, a "national" of the United States. The INA defines a "national" as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22). Lawson argues that he is a national under subparagraph B of § 1101(a)(22). Specifically, Lawson contends that he demonstrated permanent allegiance to the United States by registering with the Selective Service and receiving a draft card during the Vietnam War. Lawson states in this regard that, in conjunction with registering for

the draft, he pledged allegiance to the United States.

In support of his position, Lawson relies upon *Lee v. Ashcroft*, 216 F.Supp.2d 51 (E.D.N.Y.2002). *Lee* does present similarities to Lawson's situation. In *Lee*, the petitioner had been a permanent resident alien for almost 30 years. Like Lawson, the petitioner in *Lee* was married to a U.S. citizen and had children who were U.S. citizens. Also, petitioner had registered for the Selective Service. The petitioner, in *Lee*, however, had also applied for naturalization, a fact not present here. The act of applying for naturalization suggests an attempt to renounce allegiance to one's native country and to demonstrate allegiance to the United States. That Lawson had not applied for naturalization renders *Lee* distinguishable.

In any event, reliance upon *Lee* is misplaced because our Court of Appeals has found that *Lee* is not persuasive. In *Salim v. Ashcroft*, 350 F.3d 307, 310 (3d Cir. 2003), the Third Circuit held that even the filing of an application for naturalization does not establish that the petitioner "owes a permanent allegiance to the United States." The Third Circuit concluded "that for one ... who is a citizen of another country, nothing less than citizenship will show 'permanent allegiance to the United States.' " *Id.* Accordingly, the fact that Lawson registered with the Selective Service, an act he was required to take as a lawful permanent resident, does not confer on him the status of a United States national.

### B. Denial of Deferred Action

Lawson claims that he has been wrongfully denied deferred action. The INS contends that this claim is not cognizable in a habeas corpus proceeding.

10. The District Director's decision is included as Exhibit "D" in the January 13, 2004 "Response to Petitioner's Memorandum of Law," Dkt. Entry 35.

■ In *Immigration and Naturalization Service v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Court held that district courts have habeas corpus jurisdiction to address questions of law in cases involving criminal aliens subject to removal orders, and ruled that the Antiterrorism and Effective Death Penalty Act of 1996 as well as the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 do not repeal such habeas jurisdiction. The scope of habeas corpus review, however, is circumscribed. In *Bakhtriger v. Elwood*, 360 F.3d 414, 420 (3d Cir.2004), our Court of Appeals held that habeas corpus review does not permit a determination of whether removal reflects "an abuse of discretion" or is "unsupported by substantial evidence." In other words, habeas corpus review extends to questions such as the authority of the Attorney General to waive removal, but not to the exercise of the discretion itself. *Id.* Stated otherwise, while this Court may have authority in a habeas corpus proceeding to compel the Attorney General to exercise statutorily-conferred discretionary authority, this Court may not review the actual exercise of that discretion.

■ In *Bakhtriger*, the Third Circuit ruled that a decision not to exercise discretion in favor of asylum was unreviewable in a § 2241 proceeding. It therefore follows that the decision of the INS in this case to deny Lawson's request for deferred action is unreviewable. *Accord Botezatu v. I.N.S.*, 195 F.3d 311, 314 (7th Cir.1999) ("Review of refusal to grant deferred action is ... excluded from the jurisdiction of the district court."). Accordingly, Lawson is not entitled to any relief based on the denial of deferred action.

## C. Substantive Due Process Claim

■ This Court, of course, does have jurisdiction to decide whether removal would violate constitutional rights retained by the alien. In this regard, all aliens within the United States are "persons" entitled to the protection of the Due Process Clause. *See The Japanese Immigrant Case*, 189 U.S. 86, 100–101, 23 S.Ct. 611, 47 L.Ed. 721 (1903). Thus, aliens are entitled to the safeguard of the substantive component of the Fifth Amendment due process clause. *See Ngo v. Immigration and Naturalization Service*, 192 F.3d 390, 396 (3d Cir.1999).

■ Lawson contends that his removal to Jamaica would offend substantive due process because the United States would knowingly expose Lawson to a substantial risk of death or serious bodily harm. In support of this claim, Lawson relies primarily upon *Builes v. Nye*, 239 F.Supp.2d 518 (M.D.Pa.2003), *reconsideration denied*, 253 F.Supp.2d 818 (M.D.Pa.2003).

*Builes*, like this case, involved an alien who had provided substantial assistance that proved crucial to the conviction of fellow drug traffickers from the alien's native country. As in this case, the alien received a substantial reduction in his sentence based upon his cooperation with the prosecuting authorities. As in this case, the alien's drug trafficking conviction rendered him ineligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(B)(ii). In attempting to avoid removal, the alien had presented substantial evidence of the likelihood of serious bodily harm or death if removed to his native country, including evidence that a brother and a sister had been murdered execution-style in Columbia after the alien had cooperated with the government. Judge William Caldwell of this Court, after finding that the alien was not entitled to relief under the Convention Against Torture, found that removal to Columbia would deny the alien substantive due process. In reaching this result,

Judge Caldwell relied upon the "state-created danger" theory. 239 F.Supp.2d at 526. Specifically, Judge Caldwell found that harm was "foreseeable and fairly direct," the government was acting in "willful disregard for the safety of the plaintiff," there existed a relationship between the government and the alien in light of INS control and authority over the alien, and the government would use its authority to create an opportunity for the alien to be exposed to torture and/or death by knowingly removing him to a hostile environment. *Id.*

Judge Caldwell cited with approval *Rosciano v. Sonchik*, No. Civ. 01–472, 2002 WL 32166630, 2002 U.S. Dist. LEXIS 25419 (D.Ariz. Sept. 9, 2002). In *Rosciano*, relief from removal was granted, even though the government had declined to apply for a special visa for the alien, because there was no dispute that (a) the government had induced the alien's cooperation in criminal prosecutions, and (b) she faced a substantial likelihood of harm if removed to Columbia. The District Court found that, notwithstanding a statutory prohibition on relief from removal as a result of the nature of her conviction, the alien could not be removed because she remained protected from government-created harm by the substantive component of the Due Process Clause. *Id.* at 2002 WL 32166630, *12, 2002 U.S. Dist. LEXIS 25419, *14.

In this case, Lawson has presented some evidence of a risk of substantial bodily harm or death if removed to Jamaica. Specifically, an Assistant United States Attorney has represented in Court that, by executing an affidavit that enabled the extradition of another person, Lawson had exposed himself and his family to a risk of harm. While this evidence is not as compelling as that which prompted granting relief in *Builes* and *Rosciano*, the evidence is sufficient to accord Lawson an opportunity to more fully substantiate his fears and claim. *See Momennia v. Estrada*, 268 F.Supp.2d 679, 682 (N.D.Tex.2003) (providing opportunity for limited discovery and holding hearing on claim that cooperating alien was subject to substantial risk of harm if removed to his native country).[11] Accordingly, an evidentiary hearing on Lawson's substantive due process claim will be scheduled.[12]

---

11. The INS contends that Lawson exposed himself to the risk of harm in exchange for a reduced sentence. The INS maintains that, having made such a choice, Lawson cannot now contend that it is the United States government that is exposing him to a risk of death upon his return to Jamaica. Lawson counters by asserting that he was not aware that he faced such a substantial risk until the government moved for a downward departure, after he had provided his substantial assistance. At a minimum, there is an issue of fact as to whether Lawson knowingly exposed himself to the peril he now claims. It should also be noted that the record is unclear as to whether the prosecuting authorities induced cooperation from Lawson, or Lawson volunteered the cooperation. As recognized in *Edwards v. INS*, No. Civ. A. 03–286, 2003 WL 22097780, at *3 (E.D.Pa. Aug. 20, 2003), *aff'd*, 100 Fed.Appx. 126 (3d Cir. 2004) (table), a state-created danger-type analysis may be applicable where "the United States government affirmatively placed petitioners in danger by coercing or inducing them to provide intelligence information on drug traffickers in their countries of origin."

12. Lawson has represented himself in these proceedings. Because an evidentiary hearing is to be conducted, counsel will be appointed to represent Mr. Lawson. *See* Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable in the discretion of the District Court to proceedings under § 2241 by Rule 1(b) of the Rules Governing Section 2254 cases). The date of the hearing will be determined after the court confers with counsel for Petitioner and the INS, "having regard for the need of counsel for both parties for adequate time for

### D. Lawson's Claim for Release Pending Adjudication

Lawson entered INS custody in February, 2003. His custody status was reviewed ten months later. The Post–Order Custody Review Worksheet, attached as Exhibit "C" to the Response to Petitioner's Memorandum of Law (Dkt. Entry 35), indicates that Lawson does not have any institutional disciplinary record or any institutional adjustment problems. It also notes that he has close family ties within the United States, has a place to live in the United States, and is subject to supervised release requirements on his criminal conviction. The reviewing officers recommended continued detention without pointing to any evidence of a risk of flight or danger to the community, other than his drug trafficking conviction. The District Director's December 30, 2003 decision concludes that Lawson presents a threat to society, with the cryptic observation that "a review of your file reveals that you were convicted of the following, Title 21 Violations/STAY of DEPORT w/final order in place." The decision goes on to note that Lawson had failed to present sufficient evidence to show that he would not present a flight risk and that it was "not clearly evident that you would appear as required for removal," but again cites no evidence to substantiate these assertions. There is, for example, no evidence that Lawson had used false identities, violated conditions of release on prior occasions, or otherwise took action that would demonstrate an intent to flee. The District Director's decision seems to be based upon the fact that Lawson secured a stay of removal. In this regard, the District Director wrote that Lawson's custody status would not be reviewed again until after the stay of deportation had been lifted.[13] Lawson contests the validity of his prolonged detention while he litigates the enforceability of the removal order.

■ The fact of the removal order does not strip Lawson of his constitutionally-protected interest in liberty. *See Ly v. Hansen*, 351 F.3d 263, 269 (6th Cir.2003). "The Supreme Court has repeatedly recognized that 'if an alien is a lawful permanent resident of the United States and remains physically present here, he is a person within the protection of the Fifth Amendment.'" *Tineo v. Ashcroft*, 350 F.3d 382, 398 (3d Cir.2003). As recognized in *Ly*, the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), "established that deportable aliens even those who had already been ordered removed, possess a substantive Fifth Amendment liberty interest, and that the interest was violated by indefinite detention." *Ly*, 351 F.3d at 269. Our Court of Appeals has recognized that even excludable aliens, *i.e.*, non-lawful permanent residents, with criminal records are protected by the Due Process Clause when it comes to prolonged detention. *Ngo*, 192 F.3d at 398–99. The Supreme Court, in sustaining the authority of Congress to mandate detention of criminal aliens during *administrative* removal proceedings stressed that such detention would be only "for the brief period necessary for their removal proceedings." *Demore v. Kim*, 538 U.S. 510, 513, 123 S.Ct. 1708, 155

---

investigation and preparation." Rule 8(c) of the Rules Governing Section 2254 Cases.

**13.** The written decision, entitled "Decision by District Director to Continue Detention Upon Expiration of Removal Period," states, "[a]fter the lift of your stay of deport, a new review will be conducted on your case."

Marks are placed in the box for the following action: "Control of your custody case will be … [m]aintained at this office until the removal of your stay of deport." Exhibit "D" to the January 13, 2004 Response to Petitioner's Memorandum of Law.

L.Ed.2d 724 (2003). Justice Kennedy, whose concurring opinion provided the fifth vote for the majority opinion in *Demore*, recognized that "a lawful permanent resident alien ... could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532, 123 S.Ct. 1708 (Kennedy, J. concurring).

The INS argues that Lawson's continuing confinement is not problematic because "he is presumed to hold the keys to his cell ...." (Response to Petitioner's Memorandum of Law at 14.) The INS asserts that "Lawson can secure his own release simply by asking the Court to lift the stay of removal it entered, thereby freeing [INS] to execute his final order of removal." (*Id.* at 15.) Such a choice for Lawson, however, appears untenable. The INS would have Lawson expose himself to what he claims to be an extreme risk of harm in order to be released from custody. The position taken by the INS brings to mind the cliche, "out of the frying pan and into the fire."

■ The price for securing a stay of removal should not be prolonged incarceration. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in certain special and 'narrow' non-punitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* The fact that the alien has procured a stay of removal does not undermine the due process bedrock principle that there must be a "special justification" outweighing the alien's constitutionally-protected interest in liberty, as well as "adequate procedural protections" to continue incarceration while the alien litigates his claims. *Id.* at 690, 691, 121 S.Ct. 2491. Our Court of Appeals recognized the applicability of these fundamental principles in *Ngo*, explaining that long term detention of an alien ordered removed passes constitutional muster only if "there are adequate and reasonable provisions for the grant of parole ... and ... detention is necessary to prevent a risk of flight or a threat to the community." 192 F.3d at 397.

■ In this case, removal of Lawson is currently beyond the control of the INS as a result of the stay order. *Zadvydas* and *Ngo*, although involving different factual scenarios, stand for the proposition that where, as here, detention becomes prolonged, "special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable." *Ngo*, 192 F.3d at 398. "The stakes are high and ... grudging and perfunctory review is not enough to satisfy the due process right to liberty ...." *Id.* The assessment of flight risk and danger to the community must be made on a current basis. *Id.* "To presume dangerousness to the community and risk of flight based solely on [an alien's] past record does not satisfy due process." *Id.* at 398–99.

■ In this case, consideration of Lawson's status has indeed been perfunctory. The INS District Director premised findings of flight risk and danger to the community solely on the basis of Lawson's single conviction. "Due process is not satisfied ... by rubberstamp denials based on temporally distant offenses." *Id.* at 398. The only other factor cited by the District Director was the stay of deporta-

tion. Lawson should not be effectively punished by pursuing applicable legal remedies. As remarked in *Ly*, 351 F.3d at 272:

> An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.[14]

It bears noting that the stay of deportation was ordered in this case because the INS had failed to act promptly on Lawson's request for deferred action. Lawson was entitled to an exercise of discretion on his request, and a stay of removal was the only means of enforcing that right. At its inception, this case was not frivolous. Lawson continues to pursue a non-frivolous claim based on an asserted substantial risk of harm. At least in this circumstance, where an alien has satisfied the requirements for securing a stay of removal,[15] detention must be justified by facts showing a flight risk or danger to the community. A single marijuana-trafficking conviction, divorced from the facts peculiar to it, does not establish either flight risk or danger to the community.[16]

In summary, Respondent has not advanced an adequate basis for the continuing detention of Mr. Lawson. His prior convictions are not such as to conclude that he remains a danger to the community. Moreover, any risk of danger is attenuated by the fact that he will be subject to the supervision of a probation office under the terms of the judgment of conviction. Furthermore, no evidence of flight risk has been suggested. Certainly, a stay of deportation does not provide the requisite "special justification" for detention. Finally, his incarceration for the last eighteen months while he contests his removal order is unreasonable. *See Ly*, 351 F.3d at 270. Accordingly, release from confinement, subject to appropriate conditions of supervision, is compelled in this case.

## III. CONCLUSION

For the reasons set forth above, Lawson's claims based upon his alleged status as a national of the United States and the alleged wrongful denial of deferred action will be dismissed. Counsel will be appointed to represent Lawson, and an evidentiary hearing on his substantive due process claim will be scheduled. Lawson will be granted release from confinement

---

**14.** It can readily be anticipated that long term lawful permanent residents are likely to pursue challenges to removal orders that result in lengthy proceedings. *See Demore*, 538 U.S. at 567–68, 123 S.Ct. 1708 (Souter, J., dissenting) (lawful permanent residents "are the aliens most likely to press substantial challenges to removability requiring lengthy proceedings"). It would seem that the status of lawful permanent resident should warrant heightened scrutiny of a decision to detain such an alien while he or she pursues non-frivolous challenges to removal in a federal court. *Id.* at 545–56, 123 S.Ct. 1708 (Souter, J., dissenting) ("'the notions of fairness on which our legal system is founded' appl[y] with full force to 'aliens whose roots may have become, as they

are in the present case, deeply fixed in this land.'").

**15.** Recently, our Court of Appeals joined the First, Second, and Sixth Circuits in holding that the traditional four-prong test for preliminary injunctions governs a request for a stay of removal. *Douglas v. Ashcroft*, 374 F.3d 230, 233–34 (3d Cir.2004).

**16.** Of course, the particular facts of a conviction may substantiate findings of flight risk or danger to the community. For example, threats made by the alien to cooperating witnesses or use of firearms may be enough to warrant detention. No such circumstances have been shown to exist here.

pending that hearing. An appropriate Order follows.

## ORDER

NOW, THIS 20th DAY OF AUGUST, 2004, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Petitioner's challenges to a final Order of removal based upon alleged status as a United States national and the denial of his request for deferred action are **DISMISSED**

2. The Petition for a Writ of Habeas Corpus is **GRANTED IN PART.** Respondent shall release Petitioner forthwith, subject to reasonable conditions of supervision as determined in accordance with applicable law and regulations.

3. Within twenty (20) days from the date of this Order, Respondent shall report to this Court the fact of Petitioner's release and any conditions imposed on such release.

4. The Federal Public Defender's Office for this District is appointed to represent Petitioner. A telephonic status conference will be conducted on **Tuesday, September 7, 2004 at 1:30 p.m.** Counsel for Petitioner shall be responsible for placing the call to **570–207–5720** and all parties shall be ready to proceed before the undersigned is contacted.